**Talmadge M. BARTLETT, Sr.,
Appellant,**

v.

**Margaret HECKLER, Secretary of
Health & Human Services,
Appellee.**

No. 85–1193.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 17, 1985.
Decided Nov. 19, 1985.

---

Anthony Bartels, Jonesboro, Ark., for appellant.

Virginia J. Cronan, Dept. of Health and Human Services, Baltimore, Md., for appellee.

Before HEANEY, Circuit Judge, HENLEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

HEANEY, Circuit Judge.

Talmadge Bartlett appeals from a judgment of the United States District Court for the Western District of Arkansas, affirming the Secretary's denial of social security benefits. Because the Secretary has already determined that Bartlett was disabled as of June 15, 1984,[1] the question before us is whether the Secretary's determination that Bartlett was not disabled between April 1, 1980, and June 15, 1984, was supported by substantial evidence. For the reasons set forth below, we reverse and remand with directions to provide disability benefits from April 1, 1980.

As the Secretary points out in her brief, the ALJ is required to apply a five-step sequential evaluation process to disability claims.

> These five determinations are: (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and finally, (5) whether the impairment prevents the claimant from doing any other work. When a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary. Only if the final stage is reached does the fact finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity. 20 C.F.R. § 404.-1520 (1981).

Appellee's Brief at 13.

The administrative law judge (hereinafter "ALJ") found that Bartlett met the first two requirements; Bartlett was not working and had a severe impairment. The ALJ then found that the impairment did not meet an impairment listed in Appendix 1, and, further, that it did not prevent Bartlett from performing his past relevant

---

1. On July 8, 1980, Bartlett filed his initial application for disability benefits, stating that he became unable to work on April 1, 1980. The Secretary denied his application. On appeal, the District Court for the Eastern District of Arkansas remanded the case to the Secretary for a supplementary hearing. Although the Secretary denied benefits on remand, she eventually amended her decision and allowed disability benefits for the period commencing on June 15, 1984. While this first proceeding was still in progress, Bartlett apparently moved and initiated these proceedings, requesting benefits for the same disability period. The Secretary denied benefits, and the District Court for the Western District of Arkansas affirmed. The present proceeding before this Court is an appeal from this latter decision.

work. Since we find that Bartlett's impairment did meet a listed impairment, we must reverse and remand.[2]

20 C.F.R. Part 404, Subpart P, App. 1, 4.04 B, provides that a claimant has a severe cardiac impairment if there is,

> [i]n the absence of a report of an acceptable treadmill exercise test (see 4.00G), one of the following:
>
> * * * *
>
> 7. Angiographic evidence (see 4.00H) (obtained independent of social security disability evaluation) showing one of the following:
>
> a. 50 percent or more narrowing of the left main coronary artery; or
>
> b. 70 percent or more narrowing of a *proximal* coronary artery (see 4.00H3) (excluding the left main coronary artery); or
>
> c. 50 percent or more narrowing involving a long (greater than 1 cm.) segment of a proximal coronary artery or multiple proximal coronary arteries * * *.

20 C.F.R. Part 404, Subpart P, App. 1, 4.00 H 3 provides that:

> *[p]roximal coronary arteries* (see 4.04B7) will be considered as the:
>
> a. Right coronary artery proximal to the acute marginal branch;
>
> b. Left anterior descending coronary artery proximal to the first septal perforator; and
>
> c. Left circumflex coronary artery proximal to the first obtuse marginal branch.

An angiogram performed by Dr. William Flanagan in 1980 showed that "[t]he right coronary artery was occluded in the proximal ⅓." Record at 98. This 100% closure qualified Bartlett for an automatic finding of disability under 4.04 B 7 b, which only requires a seventy percent narrowing. The Secretary argues that the artery was probably not 100% closed. We reject this argument. "Occlusion" is defined as "[t]he state of being closed;" "occlude" means "[t]o close tight." B. Maloy, *Medical Dictionary for Lawyers* 527 (3d ed. 1960); *see also* 5A Lawyers' Medical Cyclopedia 208 (1972) (total blockage); D. Morton, *Medical Proof of Social Security Disability* 486 (1983). Dr. John Ashley diagnosed a 100% obstruction. Additionally, except where Dr. Flanagan used the term "occluded," he specified with particularity the percentage of closure.[3]

The Secretary's argument that collateral blood supplies make up for any closure is not convincing. Although Dr. Flanagan reported that there was some reconstitution through collaterals, he noted only a "faint filling" of the distal right coronary artery, and concluded that the closure of that artery was nevertheless "[h]emodynamically significant." Record at 98–99. In 1980, Dr. Robert Taylor diagnosed Bartlett as having disabling angina. This is defined as "chest pain of cardiac origin which occurs when the heart muscle is receiving an inadequate supply of oxygen (myocardial ischemia). Since oxygen is carried by blood, in most instances such pain indicates inadequate coronary circulation." 5A Lawyers' Medical Cyclopedia 200 (1972). Dr. Taylor also reported that a few weeks earlier Bartlett had probably suffered an acute myocardial infarction, a "condition in which a portion of the heart muscle dies because it is not getting enough blood." *See id.* at 202.

---

**2.** We need go no further in our analysis. In *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), the Supreme Court stated:

> The regulations recognize that certain impairments are so severe that they prevent a person from pursuing any gainful work. See 20 CFR § 404.1520(d) (1982) (referring to impairments listed at 20 CFR pt 404, subpt P, app 1). A claimant who establishes that he suffers from one of these impairments will be considered disabled without further inquiry. *Ibid.*

Accordingly, we need not consider whether Bartlett was capable of performing his past work.

**3.** We note that the angiogram indicated narrowing of other arteries as well. The left anterior descending was twenty percent closed in the middle one-third, the circumflex at the junction of the middle and proximal one-third was fifty to sixty percent closed, and a posterolateral branch which arose from the circumflex was fifteen percent closed at its origin.

In her Informative Motion of October 23, 1985, the Secretary points out that 4.04B7 applies only if the administrative record does not contain a report of an "acceptable treadmill exercise test." Motion at 1. Under 4.00G, "[t]he targeted heart rate should be *not less than 85 percent* of the maximum predicted heart rate." (Emphasis added.) Although the Secretary correctly states that Bartlett underwent a treadmill exercise test on June 24, 1981, she erroneously claims that Bartlett "reached 85% of his predicted maximum heart rate." Motion at 1. Bartlett's heart rate only rose to sixty-eight percent of his predicted maximum.[4] Hence, the treadmill test was not acceptable, and the fulfillment of the listed impairment requirements entitled Bartlett to disability benefits.

Accordingly, the judgment of the district court is reversed, and the case is remanded with directions to provide disability benefits from April 1, 1980.

---

**4.** Although Dr. Taylor's report somewhat ambiguously stated that Bartlett reached a "[p]eak [heart rate] 116 per minute * * * 85% predicted maximum of 145," this does not mean that Bartlett reached eighty-five percent of his maximum. Another portion of the report reveals the correct interpretation of these figures:

HR ACHIEVED  116
85% MAX. HR  145
(171)

Simple mathematics shows that 116 is not eighty-five percent of either 145 or of 171, and that the only two figures that do represent a relationship of eighty-five percent are 145 and 171. Bartlett's heart rate therefore would have had to reach 145 heartbeats per minute (eighty-five percent of a predicted maximum of 171) to have produced an acceptable test. Instead, his heart rate only reached 116, or sixty-five percent of 171, before the test was terminated.