Herbert **LISTENBEE**,
Plaintiff–Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**,
Defendant–Appellee.

No. 86–2073.

United States Court of Appeals,
Sixth Circuit.

March 31, 1988.

---

Kenneth F. Laritz, Warren, Mich., for plaintiff-appellant.

Victoria Roberts, Asst. U.S. Atty., Detroit, Mich., Milan D. Tesanovich, Chicago, Ill., for defendant-appellee.

Before MILBURN, Circuit Judge, WEICK and CONTIE, Senior Circuit Judges.

PER CURIAM.

Herbert T. Listenbee appeals from the district court's judgment affirming the Secretary's determination that Listenbee is not disabled and therefore not entitled to either disability insurance benefits or widower's insurance benefits. For the following reasons, we remand to the Secretary with instructions to evaluate the medical evidence as it pertains to the criteria outlined in Subsection 4.04(B) to determine whether that evidence establishes an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

I.

On November 5, 1984, Listenbee applied for disability insurance benefits and widower's insurance benefits claiming an inability to work from September 1, 1983, due to a heart condition and arthritis of the left knee. His applications were denied initially and upon reconsideration. Listenbee then requested an administrative hearing which was held on September 12, 1985. Listen-

bee was fifty-nine years old at the time of the hearing.

At the hearing, the following evidence was introduced. Listenbee testified that he was born on May 20, 1926, has a high school education, and is the widower of Myrtis Listenbee. He worked as a tool grinder machinist for Bundy Tubing Corporation for twenty-eight years. He last worked in August of 1983, when Bundy Tubing, because of a work slow-down, transferred him from his grinder job to production line work which he stated he could not perform because it involved too much pulling, lifting, and straining. Listenbee had suffered a heart attack on February 4, 1983, and returned to work in May of 1983. He stated that, upon returning to work, he found he did not have the same energy level as before and could not lift the more than twenty pounds required by the production line work. He added, moreover, that he could not have continued his work as a grinder because he could not sit for long periods of time.

Listenbee further testified at the hearing that he sees Dr. John McGinty every two months for his heart condition. He drives occasionally and spends his days reading and watching television. He tires easily and can sit for no more than one hour without pain. He lies down twice each day. His knees, he added, seldom permit him to walk further than one block. He smokes one pack of cigarettes each day and experiences chest pain when he walks too far or even when he's just sitting. He finds that nitroglycerine relieves the pain. With valium and aspirin, he sleeps well at night. Listenbee takes medication for arthritis and his heart and additionally wears a Nitrodisc on a continuing basis.

In his disability report, dated November 5, 1984, Listenbee responded that he does his own shopping, laundering, vacuuming, and cooking. He does not, however, shovel snow, sweep, mop, paint or wash walls although he sometimes cuts the grass and washes windows. For his recreational activities, he stated that he fishes and watches television. He visits friends usually on weekends and has no restrictions on his driving. In his reconsideration disability report, dated April 10, 1985, Listenbee stated that he must have help with his housework and cooking. His nerves are bad, and he can't stand too long because he tires easily.

Moreover, at the hearing, Lawrence S. Zatkin, a certified rehabilitation counselor, testified that the occupation of tool grinder machinist is a highly skilled one and could be characterized as requiring sedentary to medium exertion. He added that if Listenbee had fatigue which required him to lie down at least once during an eight hour day, it would significantly interfere with his job performance.

The following medical evidence was then introduced at the hearing.

The medical records at St. Joseph Hospital indicate that, on February 4, 1983, Listenbee was admitted to the emergency room suffering from an acute inferior myocardial infarction. While in the intensive care unit, he had one episode of ventricular fibrillation and was resuscitated without any complications. A test performed on Listenbee on February 4, 1983, revealed diffuse antero-lateral subendocardial ischemia. He was discharged on February 18, 1983, and recovered steadily at home with no further complications.

On April 14, 1983, Listenbee underwent a treadmill exercise test at which time his heartbeat, reaching 139 beats per minute, fell short of eighty-five percent of his projected fatigued heart rate of 155 beats per minute. He proceeded through the various stages of exercise to seven METs at which time the test was stopped because Listenbee developed a wide QRS pattern of left bundle branch block. ECG does not show that this was truly an ischemic pattern. McGinty presumed such to be an ischemic change.

A Holter monitor test was conducted on Listenbee on April 27, 1983. McGinty reported that the test disclosed a very rare ventricular early beat, an intermittent short run of superventricular tachycardia with centricular aberrancy, and no evidence of myocardial ischemia at all.

On May 4, 1983, Listenbee was again admitted to St. Joseph Hospital for a suspected recurrent myocardial infarction. A cardiac catheterization was scheduled. Listenbee's chest pain on this occasion, it was revealed, occurred as the result of an automobile accident in which he was involved.

Dr. Kyung–Soo Kim performed a cardiac catheterization on Listenbee on May 11, 1983. He diagnosed obstructive coronary atherosclerosis and moderate left ventricular systolic dysfunction with posterolateral wall hypokinesis. Dr. Kim stated that Listenbee's circumflex coronary artery provides two medium sized marginal branches and noted that the main artery was completely occluded in the mid-third segment before the origin of the two distal marginal branches. In a report dated May 13, 1983, Dr. Kim summarized that the cardiac catheterization confirmed the clinically suspected severe obstructive coronary atherosclerosis including occlusion of the circumflex coronary artery and subsequent left centricular posterior wall myocardial damage. Although not an urgent candidate for coronary revascularization, Dr. Kim recommended such surgery if Listenbee should experience true angina pectoris or significant changes to suggest recurrent myocardial ischemia in the future.

On April 11, 1984, Listenbee was again admitted to St. Joseph Hospital for arthroscopic surgery on his left knee which he had injured one year earlier in an automobile accident. In a preliminary report, Dr. McGinty reviewed Listenbee's 1983 heart attack and stated that Listenbee has predictable angina when he exceeds a certain level of exertion. The angina has been stable since the heart attack. Following the surgery, Dr. J. Anderson reported that Listenbee tolerated the procedure well and left the operating room in good condition.

Finally, a report from Dr. M. Ragheb, dated December 17, 1984, reiterated that Listenbee claimed disability due to heart disease and arthritis. He stated that Listenbee complained of chest pain only upon severe exertion but that regular exercise does not precipitate the chest pain. He can walk around the block, and he went deer hunting in the fall of 1984, with no discomfort. Listenbee's pain is relieved immediately with nitroglycerin. His arthritis problem began fifteen to eighteen years ago following back surgery, but he had no pain at the time of the examination. Since his knee surgery in May, 1984, Listenbee reported no pain in his left knee. He still smokes one pack of cigarettes each day but smoked over two packs each day he worked. Upon a physical examination, Ragheb noted that Listenbee walked without a limp and could walk heel to toe and squat and recover. Listenbee's knees enjoyed a full range of motion. Ragheb concluded that Listenbee has a history of coronary artery disease and has degenerative arthritis.

On the basis of this evidence, the ALJ determined, on October 29, 1985, that Listenbee was not disabled, and, therefore, not entitled either to disability insurance benefits or widower's insurance benefits. With respect to disability benefits, the ALJ found that medical evidence established that Listenbee has coronary artery disease presenting symptomatology only at strenuous levels of exertion. His left knee, following arthroscopic surgery, indicated no significant continuing residuals. Further, the ALJ found that Listenbee had no impairment or combination of impairments listed in, or medically equal to the ones listed in, Appendix 1, 20 C.F.R. § 404, Subpt. P. The ALJ, in addition, found that Listenbee's complaints of pain and fatigue were not persuasive in light of all evidence in the record. He found that Listenbee had the residual functional capacity to perform work-related activities except for work involving strenuous exertion with excessive walking, standing, and the manipulation of heavy weights. Listenbee's impairments, the ALJ found, would not prevent him from performing his past relevant work as a tool grinder since such work does not involve the above limitations.

With respect to widower's insurance benefits, the ALJ found that Listenbee was the widower of a wage earner who died fully insured on April 3, 1981, and that Listenbee had not remarried. He found that the medical evidence did not establish specific

clinical findings that were the same as, or medically equivalent to, the listed impairments in Appendix 1, 20 C.F.R. § 404, Subpt. P. The ALJ consequently found that Listenbee was not disabled and therefore not entitled to benefits.

Listenbee appealed the ALJ's decisions to the Appeals Council. The Appeals Council, on January 2, 1986, declined to review the decisions. Listenbee then timely filed the instant action with the district court pursuant to 42 U.S.C. § 405(g). Listenbee filed a motion for summary judgment. The case was assigned to a Magistrate who recommended that the Secretary's denial of benefits be affirmed. The district court then adopted the Magistrate's Report and Recommendation and thereby upheld the Secretary's denial of benefits. The district court reasoned:

> Substantial evidence supports the Secretary's finding that [Listenbee] does not qualify for benefits under the Listing of Impairments. Listing 4.04(A) requires demonstration of heart abnormalities at 5 [MET's] or less on a treadmill stress test, [Listenbee's] heart functions normally at 5 MET's. [citation omitted]. The test is valid even though [Listenbee's] heart rate during the test reached only 139 [Footnote omitted] beats per minute rather than the targeted rate of 155 beats per minute. Listing 4.00(G)(2) states a preference, not an inflexible standard of validity [that the heart rate reach eighty-five percent of the targeted heart rate.] Moreover, the preference dissolves if 'it becomes hazardous to exercise to the [targeted] heart rate....' Listing 4.00(g)(2). The administrator stopped [Listenbee's] test for this reason when [t]he patient rather abruptly changed from a narrow QRS to a wide QRS of bundle block configuration. [citation omitted].

This timely appeal followed.

Listenbee challenges the district court's denial of benefits, alleging that the evidence is insufficient to support the Secre-

tary's determination that his heart condition does not meet or equal any of the impairments listed in Appendix I, 20 C.F.R. Pt. 404, Subpt. P, and that his complaints of pain are not persuasive in light of the evidence in the record.

## II.

■ This court has jurisdiction on appeal to review the Secretary's decisions pursuant to 42 U.S.C. § 405(g) which also specifies that the Secretary's factual findings in a social security case are conclusive if supported by substantial evidence. "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir.1981) (*quoting Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)), *cert. denied*, 461 U.S. 957 [103 S.Ct. 2428, 77 L.Ed.2d 1315] (1983). In determining this question, we examine the record "taken as a whole," *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980), and "'must take into account whatever in the record fairly detracts from its weight.'" *Beavers v. Secretary of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir.1978) (*quoting Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). Even if the reviewing court were to resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir.1983) (per curiam). This deferential standard of review applies only to resolving issues of fact and credibility. *Wiggins v. Schweiker*, 679 F.2d 1387, 1389, fn. 3 (11th Cir.1982).

■ With respect to disability insurance benefits, the claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. § 423(d)(1)(A).[1] If

1. Section 423(d)(1)(A) provides:
Inability to engage in any substantial gainful activity by reason of any medically determin-

able physical or mental impairment which can be expected to result in death or which

the claimant is working, benefits are automatically denied. If a claimant is not found to have an impairment which significantly limits his ability to work (a severe impairment), then he is not disabled. Since the ALJ found that Listenbee had not worked since September, 1983, and that he suffered from coronary artery disease presenting symptomology at strenuous levels of exertion, a status post arthroscopic repair of a turn left medial meniscus, and early degenerative changes of the lumbar spine, further inquiry was necessary. If the individual is not working and has a severe impairment, it must be determined whether he suffers from one of the "listed" impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1; see 20 C.F.R. § 404.1525(a). If so, benefits are owing without further inquiry. In the present case, the ALJ found that Listenbee did not suffer from one of the listed impairments. In such a case, assuming the claimant has previously worked, the Secretary must next decide whether the claimant can return to the job he previously held. In this case, the ALJ determined that Listenbee could return to his past relevant work as a tool grinder.

■ To be entitled to widower's insurance benefits, the claimant must have a medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a period of not less than twelve months. 20 C.F.R. § 404.1577. Further, the impairment must prevent the claimant from doing any substantial gainful activity. The Secretary will find the claimant entitled to widower's benefits if (1) his impairment has specific clinical findings that are the same as or equal to any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1; and (2) if his impairment meets the durational requirement.

In the present case, the Secretary found that Listenbee's heart condition failed to meet or equal any of the impairments listed in Appendix 1, 20 C.F.R. Pt. 404, Subpt. P, and that Listenbee was capable of returning to his past relevant employment as a tool grinder machinist. On appeal, Lis-

tenbee contends that substantial evidence does not support the Secretary's findings that his heart condition does not meet or equal a listed impairment and that his complaints of pain and fatigue are not credible.

■ As discussed above, the analysis of this case focuses on the "Listing of Impairments," 20 C.F.R. Pt. 404, Subpt. P, App. 1. "The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 404.1525. Further, most of the impairments listed in Appendix 1 "are permanent or expected to result in death, or a specific statement of duration is made. For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months." Id. Thus, to be considered disabled under the Listing of Impairments, a claimant must establish that his condition is either permanent, is expected to result in death, or is expected to last at least 12 months, as well as to show that his condition meets or equals one of the listed impairments. Where a claimant successfully carries this burden, the Secretary will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

■ The listed impairment upon which Listenbee relies is found within the general section entitled Cardiovascular System, 20 C.F.R. § 404, Subpt. P, Appendix 1, § 4.00. Subsection 4.00(A) of that general section explains that "[s]evere cardiac impairment results from one or more of three consequences of heart disease; (1) congestive heart failure; (2) ischemia (with or without necrosis) of heart muscle; (3) conduction disturbance and/or arrhythmias resulting in cardiac syncope." Subsection 4.00(A) continues that, "[t]he criteria for evaluating impairment resulting from heart disease ... are based on symptoms, physical signs and pertinent laboratory findings." Listenbee claims that his impairment may be evaluated under the listing for severe cardiac impairment resulting from ische-

has lasted or can be expected to last for a continuous period of not less than 12 months.

mia. Subsection 4.00(D) provides that a claim of ischemia must be supported by evidence of electrocardiograms, angiograms, and exercise tests as described in Subsections 4.00(F), (G), and (H). Specifically, 4.00(F)(2) provides that electrocardiogram (ECG) evidence obtained in conjunction with exercise tests must include a reading at approximately five METs[2] of exercise as well as a reading at the time the ECG becomes abnormal according to the criteria in Subsection 4.04(A). Subsection 4.04(A) provides for the demonstration, during a treadmill exercise test, of one of five abnormalities at an exercise level of five METs or less. Subsection 4.00(G), which provides for exercise testing, states that the treadmill exercise test is the primary basis for adjudicating claims under Subsection 4.04. The method for performing such tests is outlined in Subsection 4.00(G)(2). This subsection provides:

> When an exercise test is purchased, it should be a treadmill type using a continuous progressive multistage regimen. The targeted heart rate should be not less than 85 percent of the maximum predicted heart rate unless it becomes hazardous to exercise to the heart rate or becomes unnecessary because the ECH meets the criteria in 4.04(A) at a lower heart rate....

Subsection 4.00(G)(4) cautions that because the treadmill exercise test is the primary basis for adjudicating claims under Subsection 4.04, the criteria of 4.04(B), including angiographic evidence, are not applicable when the evidence contains an acceptable treadmill test. However, if there is no evidence of a treadmill exercise test or if the test is unacceptable, the criteria in 4.04(B) should be used. The criteria of 4.04(B) provide, at paragraph 7(b), for angiographic evidence showing seventy percent or more narrowing of a proximal coronary artery. Subsection 4.00(H)(3)(c) defines a proximal coronary artery as the "[l]eft circumflex coronary artery proximal to the first obtuse marginal branch."

In the present case, Listenbee argues that the Secretary should have found his treadmill test unacceptable because his heart rate failed to reach eighty-five percent of his predicted maximum heart rate. Listenbee urges that the Secretary should have instead relied upon angiographic evidence demonstrating complete blockage of his left circumflex coronary artery to reach the conclusion that he had established a listed impairment and was therefore entitled to benefits.

For this proposition, Listenbee relies on *Bartlett v. Heckler*, 777 F.2d 1318 (8th Cir.1985). In *Bartlett*, the court held that, pursuant to the language of Subsection 4.00(G)(2), a treadmill test wherein the claimant reached sixty-eight percent, rather than eighty-five percent, of his maximum predicted heart rate, was unacceptable. Upon finding the test unacceptable, the court turned to angiographic evidence demonstrating complete blockage of a proximal artery, to determine that claimant had established a listed impairment and was consequently entitled to benefits. *Id.* at 1320–21.

We find the Eighth Circuit's decision in Bartlett unpersuasive in light of this court's recent decision in *Kistler v. Secretary of Health & Human Servs.*, No. 86–1366, slip op. at 2–3 (6th Cir., 1987) [816 F.2d 680, (table) ] (per curiam) which precisely addresses this issue. In *Kistler*, the petitioner complained that because he failed to achieve eighty-five percent of his targeted heart rate, his treadmill test was unacceptable and he was entitled to benefits because his cardiac catheterization tests established a listed medical impairment. *Id.* The court determined that a claimant's failure to achieve eighty-five percent of his maximum predicted heart rate does not itself render a treadmill test unacceptable, but is intended to prevent the use of such tests in determining whether ischemic heart disease is present. The court continued that the eighty-five percent

---

2. "The level of exercise is considered in terms of multiples of MET's (metabolic equivalent units). One MET is the basal $O_2$ requirement of the body in an inactive state, sitting quietly. It is considered by most authorities to be approximately 3.5 ml. $O_2$/kg./min." Subsection 4.00(G)(4).

requirement does not apply to the use of the treadmill tests for the purpose of assessing functional capacity when the diagnosis of ischemic heart disease has already been established by other means. The court went on to find that *Kistler* was not disabled and therefore not entitled to benefits. *Id.*

In applying the language of Kistler to the present case, we find that the treadmill test was indeed unacceptable. The failure of Listenbee's heart rate to reach eighty-five percent of the predicted maximum, however, did not, in and of itself, render the test unacceptable, as Listenbee argues. The test would have been acceptable, despite the failure of Listenbee's heart rate to achieve eighty-five percent of the predicted maximum had ischemic heart disease been established by other means. In the present case, Dr. McGinty interpreted Listenbee's Holter monitor examination of April 27, 1983, as showing "[n]o evidence of myocardial ischemia at all." Thus, substantial evidence supports the ALJ's determination that there was no evidence of ischemia. Since ischemic heart disease had not been established by other means and Listenbee's heart rate failed to achieve eighty-five percent of the predicted maximum heart rate, Listenbee's treadmill exercise test was unacceptable.

Because the treadmill test was unacceptable, we must remand this case to the district court with direction to remand to the Secretary with instructions to evaluate the medical evidence as it pertains to the criteria outlined in Subsection 4.04(B) to determine whether that evidence establishes an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.

In light of the above remand, it is unnecessary at this time to decide whether the Secretary properly evaluated Listenbee's subjective complaints of pain. On remand, however, the Secretary may be guided on this issue by this court's previous decision in *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847 (6th Cir.1986). In *Duncan,* this court determined that subjective complaints of pain may support a claim of disability. 801 F.2d

at 852. To support such claim, however, there must be objective medical evidence of an underlying medical condition in the record. *Id.* at 853. If so, the court must then determine either that the objective medical evidence confirms the severity of the alleged disabling pain arising from the condition or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain. *Id.*

Accordingly, the judgment of the district court is reversed, and we remand this cause to the district court with instructions to remand to the Secretary to evaluate the nontreadmill medical evidence as it pertains to the criteria of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 4.04(B) to determine whether that evidence establishes an impairment listed in Appendix 1, 20 C.F.R. Pt. 404, Subpt. P, which might entitle Listenbee to social security disability benefits.