875 F.2d 866
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
David L. PAYNE, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-5564.
 United States Court of Appeals, Sixth Circuit.
 May 9, 1989.
 
 Before KRUPANSKY and WELLFORD, Circuit Judges and CHARLES W. JOINER,* District Judge.
 PER CURIAM.
 
 
 1
 David L. Payne (Payne), plaintiff-appellant, has appealed the decision of the United States District Court for the Western District of Kentucky, which granted summary judgment in favor of the Secretary of Health and Human Services (Secretary) upon Payne's appeal from the Secretary's denial of his application for disability insurance benefits. The issue joined in this appeal is the narrow question of whether the ALJ properly concluded that the ergometric bicycle exercise stress examinations of record satisfied the requirements of a treadmill exercise test, as that term is used in the regulations located at 20 C.F.R., Subpart P, Appendix I, section 4.04A.
 
 
 2
 The underlying facts in this appeal, as reflected by the administrative record, are not in dispute. Payne had filed an application for Social Security disability benefits on December 2, 1985, alleging that he had become disabled on of May 30, 1985 as a result of a cardiac condition. Payne's application for disability benefits was heard before an Administrative Law Judge (ALJ) on October 21, 1986. At that hearing the appellant submitted evidence from physicians concerning his cardiac condition, and the extent of blockage of the cardiovascular system caused thereby. Specifically, the documentary evidence disclosed that appellant was hospitalized on May 30, 1985 with chest pain, and was diagnosed as suffering from acute myocradial infarction. Payne was released from the hospital shortly thereafter. Cardiac catherization evaluations performed in July revealed that his right artery was totally occluded and that the left ventricle was opacified significantly. Payne was again hospitalized in August, 1986 with reported cardiac complications. The diagnosis was a totally occluded right coronary artery.
 
 
 3
 Additional medical evidence reflected that the appellant had undergone three bicycle ergometric exercise stress examinations: once on March 27, 1986, and twice on August 1, 1986. The results of these three bicycle ergometric stress tests failed to support the requirements listed under the applicable regulations to qualify as a disabling condition because the results of all three bicycle ergometric examinations were negative for ischemia.[1] See 20 C.F.R. 404, Subpart P, Appendix I, section 4.00A; see also Listenbee v. Secretary of Health & Human Serv., 846 F.2d 345, 351-52 (6th Cir.1988) (per curiam).
 
 
 4
 On April 23, 1987, the ALJ concluded that, based upon the medical evidence presented, and the testimony of Payne, the appellant had failed to establish an impairment or combination of impairments which would meet or equal one of the listed impairments under 20 C.F.R. Part 404, Subpart P, Appendix I, Regulation No. 4. The ALJ decided that, although Payne was incapable of performing his past relevant work as a utility painter and general laborer, he did possess the residual functional capacity to perform sedentary work. Based upon this finding, the ALJ determined that Payne was not disabled under the Act, in light of his residual capacity, age, education and work experience.
 
 
 5
 Payne timely requested reconsideration of the ALJ's decision by the Appeals Council. On June 30, 1987, the Appeals Council adopted the ALJ's findings and conclusions, and affirmed the determination that Payne was not disabled under the Social Security Act. The ALJ's decision became the final determination of the Secretary. The appellant thereupon petitioned the United States District Court for the Western District of Kentucky to review the Secretary's determination. Both parties to this appeal thereafter filed motions for summary judgment.
 
 
 6
 The district court assigned this petition to a Magistrate for the entry of Findings of Fact, Conclusions of Law and Recommendations. The parties submitted motions for summary judgment, along with supporting memoranda, and the Magistrate conducted arguments on these cross motions on March 21, 1988. After considering the administrative record and the arguments of counsel, the Magistrate entered his Findings of Fact, Conclusions of Law and Recommendations on March 30, 1988, in which he concluded that there was substantial evidence in the record to support the Secretary's determination that Payne was not disabled. The Magistrate therefore recommended that the Secretary's motion for summary judgment be granted.
 
 
 7
 Payne timely filed objections to the Magistrate's Report with the district court. On April 28, 1988, after having reviewed the Magistrate's findings and conclusions, the district court adopted the Report and Recommendation in its entirety and, accordingly, granted summary judgment in favor of the Secretary. Payne thereupon commenced the instant appeal from the district court's disposition.
 
 
 8
 On appeal, Payne has urged this court to conclude that the ALJ erred in rejecting his argument that he was entitled to a determination of disability under the criteria listed at 20 C.F.R. Part 404, Subpart P, Appendix I, as demonstrated by sections 4.00, 4.04A, and 4.04B. The subparts of this regulation provide that a claimant who meets the specific listed requirements, or demonstrates similar disqualifications of equal severity, will automatically be deemed disabled by the Secretary without further inquiry.
 
 
 9
 The regulations recognize that certain impairments are so severe that they prevent a person from pursuing any gainful work.... A claimant who establishes that he suffers from one of these impairments will be considered disabled without further inquiry.
 
 
 10
 Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983) (citations omitted); see also Dorton v. Heckler, 789 F.2d 363, 365 (6th Cir.1986) (per curiam); Bartlett v. Heckler, 777 F.2d 1318, 1320 n. 2 (8th Cir.1985).
 
 
 11
 The regulations listed under section 4.04 provide two independent methods for proving the existence of a disabling cardiac condition. Under the first part of the section, listed at 20 C.F.R. Part 404, Subpart P, Appendix I, section 4.04A (section 4.04A), the claimant must demonstrate that his cardiac condition significantly limits his ability to tolerate physical activity and stress by objective clinical data in the form of treadmill induced stresses which measure the heart's capacity for physical activity. Under the second part of this section, listed at 20 C.F.R. Part 404, Subpart P, Appendix I, section 4.04B (section 4.04B), the claimant must demonstrate by objective clinical data based upon angiographic testing that his cardiac condition has caused significant damage to his cardiovascular system as a result of significant blockage of specific coronary arteries.
 
 
 12
 The identified subsections of 4.04 are not alternative methods of demonstrating the existence of a disabling coronary condition; rather, the Secretary has indicated that in cases where there is an acceptable treadmill examination, the criteria listed under 4.04A is to be employed, and the ALJ is not to consider the standards listed under 4.04B. Only in circumstances where there is no acceptable treadmill examination in the administrative record is the ALJ to consider an applicant's claim under the criteria set forth under section 4.04B.
 
 
 13
 Where the evidence includes the results of a treadmill test, this evidence is the primary basis for adjudicating claims under 4.04. For purposes of this Social Security disability program, treadmill exercise testing will be evaluated in accordance with the ECG criteria in Sec. 404A.... The criteria in 4.04B are not applicable if there is documentation of an acceptable treadmill exercise test[.] ... [I]f there is no evidence of a treadmill exercise test or if the test is not acceptable, the criteria in 4.04B should be used.
 
 
 14
 20 C.F.R. Subpart P, Appendix 1, Section 4.00G (4) (emphasis added); see also Atterberry v. Secretary of Health & Human Serv., No. 87-4038, slip op. at 6 (6th Cir. April 4, 1989) ("Subsection B would only be applicable in the absence of 'a report of an acceptable treadmill exercise test.' "); Listenbee v. Secretary of Health & Human Serv., 846 F.2d 345, 351 (6th Cir.1988) (per curiam) ("[T]he criteria of 4.04(B), including angiographic evidence, are not applicable when the evidence contains an acceptable treadmill test."); see also Bartlett v. Heckler, 777 F.2d 1318, 1321 (8th Cir.1985) (same).
 
 
 15
 In the case at bar, the ALJ assumed the three ergometric cycle stress examinations introduced into the administrative record constituted the equivalent of treadmill stress examinations, and applied section 4.04A in evaluating the appellant's claim. Because he concluded that the criteria listed under section 4.04A was applicable, the ALJ did not proceed to consider Payne's cardiac condition under the standard set forth under section 4.04B in concluding that Payne did not satisfy the conditions for demonstrating his cardiac disability. It is the appellant's contention in this appeal that the ALJ erred in presuming that an ergometric bicycle stress examination is the equivalent of the treadmill test and could be utilized to invoke the standard of 4.04A, arguing that such tests could not be used interchangeably with "treadmill" examinations.
 
 
 16
 The pertinent interpretative regulations promulgated by the Secretary specifically employ the term "treadmill" examination when referring to the exercise test which is contemplated under section 4.04A. In his decision, the ALJ merely assumed that an ergometric bicycle stress examination could substitute for a treadmill examination as a measure of stress induced cardiac disfunction in response to exercise, without providing any explanation, analysis or authority for the assumption. Similarly, in his briefs on appeal to the district court and before this court, the Secretary has failed to direct this court's attention to any statute, regulations or legal precedent for this proposition. Because the ALJ also failed to specifically explore this issue in his decision, it is necessary to remand this matter to the Secretary to determine if, upon the medical evidence before him, an ergometric bicycle examination can satisfy the methodological requirements imposed upon a treadmill examination under 20 C.F.R. Part 404, Subpart P, Appendix I, section 4.00G (section 4.00G).
 
 
 17
 Additionally, assuming that an ergometric cycle test can theoretically satisfy the methodological requirements of a treadmill examination, the ALJ failed to determine if the results of the particular ergometric bicycle stress submitted in the case at bar were "acceptable" within the parameters of the Secretary's interpretative regulations. Section 4.00G specifies that to qualify as an acceptable stress examination,[2] the particular test must be consistent with a finding that the applicant's targeted heart rate reached "not less than 85 percent of the maximum predicted heart rate." Section 4.00G; see also Listenbee, 846 F.2d at 351-52; accord Bartlett, 777 F.2d at 1320-21.
 
 
 18
 In the case at bar, the ALJ failed to make an explicit finding that the appellant's heart rate achieved at least 85 percent of his maximum predicted heart rate during the course of any of the three ergometric cycle stress examinations as required under section 4.00G (2). Moreover, the administrative record itself, while detailing the maximum achieved heart rate during the three ergometric cycle tests,[3] failed to identify Payne's maximum predicted heart rate for these examinations. This court is therefore unable to determine whether the ALJ erred in concluding that the three ergometric examinations at issue in this case were sufficient to constitute "acceptable" treadmill type tests for the purposes of invoking the listed standards of section 4.04A.
 
 
 19
 Accordingly, this case is REMANDED to the Secretary to determine if an ergometric bicycle examination can satisfy the methodological re uirements listed for a treadmill examination and, if so, whether the results of the ergometric bicycle examinations at issue in this appeal satisfied the criteria of an "acceptable" stress examination, listed under section 4.00G, and for further proceedings consistent with that inquiry.
 
 
 
 *
 Honorable Charles W. Joiner, United States District Court, Eastern District of Michigan, sitting by designation
 
 
 [1]
 Ischemia is the medical terminology for coronary artery disease. Merck Manual 488 (14th ed. 1982). The Secretary's regulations utilize stress examinations as indicators of ischemic disorders because it is generally regarded that aerobic exercise will produce chest pain, known as angina pectoris, which signals the presence of a cardiac disfunction. Merck Manual 488 (14th ed. 1982)
 
 
 [2]
 Section 4.00G specifies that the standards enunciated under section 4.04A apply only where there is "an acceptable treadmill exercise test." Section 4.00G (4). If there were no acceptable treadmill examinations in the record, the ALJ should instead have employed the standards set forth under section 4.04B
 
 
 [3]
 The administrative record disclosed that Payne had achieved a maximum heart rate of 148 beats per minute during the first ergometric cycle test on March 27, 1986; that he reached a maximum heart rate of 130 beats per minute during the second and only 120 beats per minute during the third ergometric tests on August 1, 1986