918 F.2d 957
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Eva P. KING, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health & Human
Services, Plaintiff-Appellant.
 No. 90-1302.
 United States Court of Appeals, Sixth Circuit.
 Nov. 23, 1990.
 
 Before MERRITT, NATHANIEL R. JONES and WELLFORD, Circuit Judges.
 PER CURIAM.
 
 
 1
 Appellant Eva P. King appeals the district court judgment affirming the denial of her claim for social security benefits. We affirm the judgment of the district court.
 
 I.
 
 2
 In this appeal Eva P. King seeks further review of the final decision of the Secretary of Health and Human Services denying her application for disability insurance benefits. King initially filed for social security disability insurance benefits on October 28, 1985. King claimed a disability onset date of December 21, 1984, due to "post-surgery left knee, torn cartilage pain, instability, swelling; post-bunionectomy, right foot (failed); post-surgical hiatal hernia; cervical radiculopathy; low back pain syndrome; intermittent hypertension; bilateral shoulder pain." King's application for disability insurance benefits was denied on February 25, 1986. King successfully returned to work and thus she did not pursue the denial of her initial application for disability benefits. She was able to work until about September 9, 1986.
 
 
 3
 On November 10, 1986, King filed a second application for disability insurance benefits, alleging a disability onset date of September 9, 1986. King claimed disability for the same conditions listed in her initial application, plus cancer of the esophagus, right knee pain and left ankle problems. King's second application for disability benefits was denied on January 29, 1987. King filed a request for reconsideration on February 27, 1987, and her claim was again denied on April 15, 1987. On May 22, 1987, King filed a request for a hearing, and a hearing was held before Administrative Law Judge Robert D. Stalker of the Secretary of Health and Human Services' Office of Hearings and Appeals. On March 28, 1988, Judge Stalker denied King's claim for disability insurance benefits.
 
 
 4
 After Administrative Law Judge Stalker denied King's claim, King filed a request for review of the hearing decision with the Appeals Council. The Appeals Council, however, denied King's request for review on October 6, 1988. Thereafter, King filed a complaint in the United States District Court for the Eastern District of Michigan requesting judicial review of the final decision of defendant-appellee Louis W. Sullivan, M.D., Secretary of Health and Human Services. United States Magistrate Virginia M. Morgan issued a report and recommendation on May 18, 1990, recommending that the final decision of the Secretary be affirmed. King filed objections to the magistrate's report and recommendation. On January 11, 1990, United States District Judge James P. Churchill adopted the magistrate's findings and recommendation and granted summary judgment in favor of the Secretary. It is from this decision that King now appeals.
 
 II.
 
 5
 We find it necessary at this point to outline both King's work and medical histories. Appellant King is a forty-six year old black woman. During the period of September, 1968, through 1986, King worked in a foundry for General Motors Corporation. During most of that period, King worked as a core processor and core setter; but, from 1975 to 1979, King performed general labor. Both positions involved walking, standing, sitting, bending and reaching. As a core setter, King was required to handle or lift as much as fifty pounds.
 
 
 6
 King injured herself in December of 1984 and had knee surgery in January, 1985. She was off work for about six weeks. King returned to work but had to leave her job again for about three months due to her condition. During this period away from work, July 1985 to November 1985, King received disability payments from her employer. King returned to work in the winter of 1985 and was given a job as a core processor in December 1985, which allowed her to sit and stand as needed and only required her to lift as much as fifteen pounds. From December 1985, to September 1986, King worked as a core processor. During this period, she missed about a month of work. King worked for two weeks in December, 1986, and for two weeks in January, 1987. King has not worked since February 2, 1987. On January 21, 1988, General Motors Corporation granted King a "Total and Permanent Disability Pension."
 
 
 7
 King's medical history is quite lengthy. She has been a patient of Dr. Jack Martin since 1970. Tr. at 222. In August, 1972, X-rays of King's right ankle showed widening of the ankle mortise along the lateral aspect. Id. at 128. In 1973, X-rays of the cervical spine and right shoulder showed no significant changes. Id. at 129. By May 1984, X-rays of the right ankle revealed minimal instability of the lateral collateral ligament. Id. at 130. In July of 1984, early degenerative changes were seen in King's right foot which necessitated a bunionectomy of the right great toe. Id. at 131-32. Also in 1984, studies of King's back revealed "no evidence of any nerve root involvement, but findings here consistent with low grade cervical disc disease, but without neurologic dysfunction." Id. at 133. During this 1984 examination, King was described by Dr. Martin as a "[h]ealthy appearing lady." Id. In November 1984, X-rays showed some ossification of the left knee, which probably represented bipartite patella. Id. at 143. Chest X-rays in January 1985 showed no abnormalities. Id. at 144. King was admitted to the hospital in January 1985, for surgery on her left knee, which she had injured at work.
 
 
 8
 In October 1985, Dr. Martin reported that King had recurrent left knee pain with bipartite patella (double knee cap), chondromalacia (softening of the cartilege), Baker's cyst and past arthroscopic excision torn medical meniscus. Id. at 163. Dr. Martin also reported that King had pain in her right foot from metatarsalgia, secondary to degenerative arthritis. Id. Dr. Martin noted Chronic C-6-7 cervical disc disease with intermittent paresthesias left arm. Id. at 163. Dr. Martin stated that King had "limited functional capacity with her work activity, both at her knee and [right] foot and [could] not tolerate sustained standing." Id. at 164. He found King's neck pain to be intermittent and neurological exams were normal. Id. X-rays of the right knee and foot were again taken in January, 1986. The right foot was normal except for signs of the prior surgery, and the right knee showed slight degenerative arthritic changes. Id. at 165. King was hospitalized for two days in March 1986 for muscular chest pain and hypertension. Id. at 166.
 
 
 9
 In July 1986, King was examined by Dr. Garth Nelson. Dr. Nelson noted that King had full range of motion in her spine, her straight leg raising was negative, her right great toe was irritable and showed a loss of motion, her left knee had a full range of motion, was nonirritable and without effusion. Id. at 172. Dr. Nelson encouraged King to lose weight to help alleviate some of her pain. Id. In August, 1986, Dr. Michael D. Smith noted that her physical examination was benign and X-rays of the cervical, lumbar, left knee, and right foot were "unremarkable." Id. at 173. In November 1986, Dr. Martin reported that King's chrondomalcia in her left knee was severe, that her lumbar range of motion was limited by 30-40 percent, that her straight leg raising was occasionally positive at 70 degrees, that her right ankle was not stable, and that she had occasional back muscle spasm and swelling of the knees. Id. at 178-184. During this examination, King could walk, walk on her heels and toes, squat, climb stairs and get on and off the examining table. Id. at 180. Dr. Martin was of the opinion that King's complaints were bona fide and that her condition was disabling. Id. at 182. Dr. Martin stated that King could return to work as soon as her back symptoms allowed. Id. at 184. In December, 1986, a lesion was reported on King's esophagus. Id. at 185. In January, 1987, an X-ray of King's right foot revealed that her great right toe was properly aligned but that there was "moderate degenerative change in the first m.p. joint." Id. at 188. After an examination of King in March of 1987, Dr. William S. Wilke stated that King was suffering from fibrositis and that although it was not malignant or crippling, the pain was very real. Id. at 193. In March 1987, Dr. Martin reported that King's lumbosacral spine's range of motion was limited by 50 percent, her knees showed normal range of motion. Dr. Martin opined that King was totally disabled from her job. Id. at 190-92. Also in March of 1987, a Dr. Shek diagnosed King as having angina pectoris, hypertension, and recurrence of hiatal hernia. Id. at 196.
 
 
 10
 At the Secretary's request, King was examined by Dr. P. Vanasupa, a neurological surgeon, in October 1987. Dr. Vanasupa found no neurological abnormalities. Id. at 205. In November 1987, King was examined by A.M. Eckhouse, D.O., also at the Secretary's request. All aspects of the physical exam of her lumbar and cervical spine, including range of motion, were normal. Id. at 208. Her knees had full range of motion, she did not have a visible limp, she could squat half way, and there was no effusion of the knees. Id. at 209. Her ankles were normal and X-rays of the foot were unremarkable. Id. Dr. Eckhouse opined that King suffered from osteoarthritis. Id. Dr. Eckhouse believed that King could lift and carry between ten to twenty pounds and that she could stand and walk for about four hours in an eight-hour workday, but only for two hours without interruption. Id. at 210. He did not think that King's condition affected her ability to sit, reach, handle, feel, push or pull. Id. at 211.
 
 
 11
 At the request of King's attorney, she was examined by Dr. William B. Redman, May, 1988. Dr. Redman noted that King's knees showed a good range of motion but lateral instability. X-rays of the knee showed bipartit patella and chrondomolacia. He also noted a fair degree of degenerative changes in her spine and an unstable lower back. Dr. Redman opined that King's back and knees were painful and that her knees and foot were really not subject to cure. Id. at 248-49.
 
 
 12
 At the hearing before the ALJ on October 1, 1987, King testified that she has pain in her knees, right foot, ankle, lower back and neck. She elevates her legs to reduce the swelling in her knees. Her left knee gives out about once a week. At times King said she cannot walk because of the pain in her foot. She said she has chest pains about twice per month for about an hour. King testified that she can stand for about thirty minutes and then her knees buckle and her right foot hurts. King said she could walk about one block and does not know how much weight she could carry. She said she could sit for about an hour and then her hips and lower back begin to hurt. She also said that sometimes her right arm gets stiff. King did not think she could perform a sedentary job with a sit/stand option because her back and knees would bother her too much.
 
 III.
 
 13
 King attacks the district court's judgment affirming the denial of benefits on several grounds. The issues presented for review are: (1) whether the district court properly found that substantial evidence supported the secretary's decision that King's knee condition did not meet or equal listed impairment 1.03A; (2) whether the secretary erred by refusing to credit the medical opinions of King's treating physician on the issue of her ability to return to gainful employment; (3) whether the secretary's failure to credit King's testimony is supported by substantial evidence; and (4) whether the secretary failed to establish that a significant number of jobs which King is capable of performing exists in the relevant economy.
 
 
 14
 In order to qualify for disability benefits under Title II of the Social Security Act, a claimant must demonstrate a severe physical or mental impairment that is expected to cause death, or that has lasted or is expected to last for twelve consecutive months. 20 C.F.R. Sec. 404.1505(a). The ultimate burden is upon the claimant to establish an entitlement to benefits by proving the existence of a disability. Listenbee v. Secretary of Health & Human Services, 846 F.2d 345, 349 (6th Cir.1988). When the Secretary makes a decision regarding a claim of disability, the Social Security Act, 42 U.S.C. Sec. 405(g), provides that his findings of fact are conclusive if supported by substantial evidence. "Substantial evidence is defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Myers v. Secretary of Health & Human Services, 893 F.2d 840, 842 (6th Cir.1990) (citation omitted). In our review of the Secretary's decision, "we do not consider the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Id. at 842 (citation omitted). Thus, our sole inquiry in this appeal of the Secretary's denial of disability benefits is whether there is substantial evidence to support the Secretary's decision. Listenbee, 846 F.2d at 349.
 
 
 15
 20 C.F.R. Pt. 404, Subpt. P, Sec. 404.1520 outlines the steps for evaluating disability. If a claimant is not working, has a severe impairment and meets the duration requirement, such as King, it must be determined whether the claimant suffers from one of the "listed" impairments or an impairment equal to one of the "listed" impairments. 20 C.F.R. Sec. 404.1520(a); Listenbee, 846 F.2d at 350. If it is determined that the claimant suffers from a listed impairment or one equal thereto, the inquiry ends and benefits are owing. 20 C.F.R. Sec. 404.1520(d); Listenbee, 846 F.2d at 350. If it is determined that the claimant does not suffer from one of the listed impairments, the Secretary must decide if the previously working claimant can return to work, either in his or her past capacity or in another capacity. Listenbee, 846 F.2d at 350.
 
 
 16
 In the present case, the Secretary determined that King did not suffer from one of the listed impairments or an impairment equal thereto and that she could return to some type of sedentary work. Administrative Law Judge Robert D. Stalker found that King has a severe impairment stemming from "a combination of osteoarthritic changes in her back and lower extremities, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in [Sec. 1.03A]." Tr. at 22. King first argues that the Secretary erred by finding that she had not established by the "great weight" of medical evidence that her knee condition meets or equals the criteria of Listed Impairment 1.03A. She argues that she does have a listed impairment or one equal thereto. King relies upon 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 1.03. Listed Impairment 1.03 reads in part:
 
 
 17
 Arthritis of a major weight-bearing joint (due to any cause):
 
 
 18
 With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. With:
 
 
 19
 A. Gross anatomical deformity of hip or knee (e.g, subluxation, contracture, bony or fibrous ankylosis, instability) supported by X-ray evidence of either significant joint space narrowing or significant bony destruction and markedly limiting ability to walk and stand[.]
 
 
 20
 King argues that the weight of medical evidence in the record establishes a meeting or equaling of the criteria of Listed Impairment 1.03A.
 
 
 21
 We find that the Secretary's decision that King's knee condition does not meet or equal the criteria set forth in Listed Impairment 1.03A is supported by substantial evidence. In order to establish that she has met a listing, King must satisfy each of the criteria contained in the applicable listing. In order to fall under Listed Impairment 1.03A, King had to establish the following: (1) "a history of persistent joint pain and stiffness;" (2) with "signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination;" (3) with "gross anatomical deformity" of her knee; (4) "supported by X-ray evidence;" (5) resulting in a "markedly limiting ability to walk and stand." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Sec. 1.03. Further, in order to establish equivalence, King had to show medical findings that are at least equal in severity and duration to those required by Listing 1.03A. Dorton v. Heckler, 789 F.2d 363, 366 (6th Cir.1986) (per curiam); 20 C.F.R. Sec. 404.1526(b) (1990). This the evidence as a whole failed to do. In July, 1986, Dr. Nelson was of the opinion that King's left knee had a full range of motion, was nonirritable and without effusion. In August, 1986, Dr. Smith noted that X-rays of the left knee were unremarkable. In November of 1986, acknowledging King's knee problems as severe, Dr. Martin noted that she could walk, walk on her heels and toes, squat, climb stairs, and get on and off the examining table. He cleared her to return to work as soon as her back allowed. In March, 1987, Dr. Martin reported that King's knees showed normal range of motion. Finally, in November 1987, Dr. Eckhouse noted that King's knees had full range of motion, she had no visible limp, she could squat half way and there was no effusion of the knees. Dr. Eckhouse believed that King could carry ten to twenty pounds and that she could stand and walk for about four hours in an eight-hour workday.
 
 
 22
 King would have the Secretary and this court rely solely upon the reports of the treating physician, Dr. Martin. Although the opinion of a treating physician is entitled to deference, King, 742 F.2d at 973, the determination of disability must be based on the record as a whole. Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980). The determination of disability is ultimately the responsibility of the Secretary, and he is not bound by the opinion of a treating physician when there is substantial evidence in the record to the contrary. 20 C.F.R. Sec. 404.1527; Hardaway v. Secretary of Health & Human Services, 823 F.2d 922, 927 (6th Cir.1987). Therefore, although there is evidence in the record that King's knees were consistently painful and problematic, there is also substantial evidence in the record indicating that King's knees were not suffering from "gross anatomical deformity," that her knees did not have a marked limitation of motion or abnormal motion, and that her knee condition was not such that it equaled a listed impairment. See Dorton, 789 F.2d at 367 ("Even in a close case in which the myriad medical problems ... [are clearly evident]" and "almost establish[ ] a disability," decision of ALJ "should not be disturbed unless we are persuaded that his findings are legally insufficient") (emphasis in original). Hence, it cannot be said that the Secretary's decision that King's knee condition was not a listed impairment or one equal thereto was not supported by substantial evidence.
 
 
 23
 Second, King contends that the Secretary erred by refusing to credit the medical opinions of her treating medical specialists on the issue of whether King was able to return to gainful employment. King correctly states that the Secretary is not free to totally disregard competent evidence of disability furnished by a treating physician. As noted earlier, however, the Secretary makes his decision and we review that decision on the record as a whole. Hardaway, 823 F.2d at 927 (look at "entire record and not on only some of the evidence to the exclusion of all other relevant evidence"). King alleged a disability onset date of September 9, 1986. Examinations occurring after this date, however, support the Secretary's conclusion that King could do sedentary work. To be sure, there is evidence in the record indicating that King's condition will limit or totally preclude future gainful employment. Taken as a whole, however, there is substantial evidence in the record, as shown above, indicating that King is able to perform some type of sedentary work. See Bradley v. Secretary of Health & Human Services, 862 F.2d 1224, 1227 (6th Cir.1988) (per curiam) ("claimant is not disabled simply based on a need to alternate between sitting, standing and walking"). Although this record is replete with inconsistent reports and King's own testimony, we must "acknowledge the discretion vested in the ALJ to weigh all the evidence." Bradley, 862 F.2d at 1227. "Even if the reviewing court were to resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence." Listenbee, 846 F.2d at 349.
 
 
 24
 King's next argument is that the Secretary's failure to credit King's testimony is not supported by substantial evidence. King contends that because each of the examinations performed on King revealed an underlying medical basis for her subjective complaints, the Secretary erred in not crediting her testimony.
 
 
 25
 The administrative law judge found that "[c]laimant's complaints are not fully credible to the extent they would prevent her from performing the restricted range of sedentary work identified by the vocational expert. The extent of claimant's complaints have not been substantiated by the clinical medical evidence herein, the observations of the undersigned or the observations of the physicians." Tr. at 22 (emphasis added). In evaluating complaints of pain, the ALJ may consider the credibility of the claimant. Bradley, 862 F.2d at 1227. Further, the ALJ's conclusions "with respect to credibility should not be discarded lightly and should be accorded deference." Hardaway, 823 F.2d at 928.
 
 
 26
 The ALJ did not find that King's claims regarding her physical condition were not credible. Neither did he find King's complaints insincere or false. In fact, the record is full of medical evidence substantiating King's complaints regarding her physical condition. What the ALJ found not credible was King's claim that she could not do any sedentary work whatsoever. The objective evidence, according to the ALJ, did not confirm the alleged severity of her condition. Although the record does not contain evidence refuting King's claims of various physical problems, the record does refute her claim that she is unable to engage in any sedentary work. Taken as a whole, the evidence substantially supports the Secretary's finding that King's claim that she could do no sedentary work was not credible.
 
 
 27
 Finally, King contends that the Secretary failed to establish that a significant number of jobs which the plaintiff is capable of performing exists in the relevant economy. If an ALJ finds that a claimant does not have the residual functional capacity to perform his or her "past relevant work, the burden shift[s] to the Secretary to show that [the claimant] possesses the capacity to perform other substantial gainful activity that exists in the national economy." Varley, 820 F.2d at 779. "To meet this burden, there must be 'a finding supported by substantial evidence that [claimant] has the vocational qualifications to perform specific jobs.' " Id. (citation omitted).
 
 
 28
 The ALJ found that King was "unable to perform her past relevant work as a core setter." Tr. at 22. He also found that King's "residual functional capacity for the full range of sedentary work is reduced by her need for a sit/stand option in a non-hazardous environment." Id. Finally, the ALJ found that:
 
 
 29
 Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, ... there are a significant number of jobs in the national economy which she could perform. Examples of such jobs are: service packager, bench assembler, product examiner, electrical component tester, cashier and desk clerk. These jobs exist in significant numbers in the national and regional economies.
 
 
 30
 Id. at 23. King challenges the ALJ's finding here because she argues that it is based on an inaccurate hypothetical question posed to a vocational expert. The hypothetical question challenged is as follows:
 
 
 31
 For purposes of this hypothetical question, I'd like to have you assume that I might make a determination that Miss King could do a restricted range of unskilled, sedentary work, but that that work would have to provide her with a sit-stand option. It would have to be in a non-ajus (phonetic) environment. And I define that as not being around any dangerous machinery, working at heights, not being exposed to any vehicle or travel, anything of that nature. No use of the lower extremities except to exercise the sit-stand option .... And with those restrictions in place on a full range of semi-skilled, sedentary work, would there be any jobs that Miss King might be able to do?
 
 
 32
 Id. at 66-67. King contends that the above hypothetical question is defective because it fails to state that King suffers from severe chronic pain, has an unstable back, has a limited range of motion in her spine, must elevate her leg and is taking pain medication which dulls her sensorium. King contends that this hypothetical question is not supported by a preponderance of evidence in the record. The Secretary, on the other hand, argues that the symptoms omitted from the hypothetical question are not supported by objective evidence in the record and thus were not necessary or relevant with respect to the hypothetical question.
 
 
 33
 "An ALJ may ask a vocational expert hypothetical questions" as long as the questions are "supported by evidence in the record." Hardaway, 823 F.2d at 927. In fact, the substantial evidence required to meet the burden placed upon the Secretary at this state "may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.' " Varley, 820 F.2d at 779 (citation omitted). Hence, the question is whether the above hypothetical, used by the ALJ, accurately portrayed King's physical impairment.
 
 
 34
 We think that the hypothetical question posed by the ALJ can be said as a whole to have accurately portrayed King's physical impairment. Moreover, along with the hypothetical question, the ALJ stated "I'd also like to consider if we might the amount of torso utilization that would be involved in these jobs[.]" Tr. at 67. Alternatively, as King's physical problems arise from her torso, knees and feet, all of which are mentioned in the hypothetical inquiry, we find any alleged error in the framing of the hypothetical question itself to be harmless.
 
 IV.
 
 35
 For the foregoing reasons we AFFIRM the judgment of the district court.