Benjamin HARDAWAY,
Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,
Defendant-Appellee.

No. 86–1196.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 12, 1986.

Feb. 27, 1987.

Janet B. Johnson-Vinion, argued, Asst. Regional Counsel, Dept. of H & H S, Chicago, Ill., for defendant-appellee.

Rosemary E. Jabbour, argued, Kelman, Loria, Downing, Schneider & Simpson, Detroit, Mich., for plaintiff-appellant.

Before: ENGEL and JONES, Circuit Judges, and ALLEN, Chief District Judge.[*]

PER CURIAM.

Claimant Benjamin Hardaway appeals the district court's judgment affirming the Secretary's decision denying disability benefits. We affirm.

Hardaway filed an application for disability insurance benefits on December 14, 1979, alleging that he had become unable to work on July 17, 1979, at age 51, due to bronchial asthma, emphysema and angina. This application was denied initially and on reconsideration. Hardaway filed a timely request for a hearing, and one was held on June 9, 1981. On November 25, 1981, the Administrative Law Judge ("ALJ") ruled that Hardaway was not disabled. The ALJ's decision became the final decision of the Secretary when it was affirmed by the Appeals Council on March 8, 1981. Hardaway then sought judicial review of the Secretary's decision in the District Court for the Eastern District of Michigan. The case was referred to a magistrate. On October 29, 1982, the magistrate issued his report and recommendation, in which he found that the Secretary's decision was not supported by substantial evidence. The magistrate recommended that the matter be remanded to the Secretary for further proceedings. The district court accepted the magistrate's recommendation and remanded the case to the Secretary.

On September 19, 1983, a supplemental hearing was held before an ALJ. The ALJ issued his recommended decision on October 20, 1983, finding that Hardaway was not entitled to benefits. The ALJ concluded that Hardaway could perform sedentary work in a relatively pollution-free atmosphere. The tape recording of this hearing was lost, making the compilation of a complete transcript of that proceeding impossi-

ble. On July 25, 1984, the Appeals Council remanded the case for another hearing because the tape recording had been lost, and because Hardaway had submitted additional evidence for consideration.

The third hearing was held on November 15, 1984. On December 27, 1984, the ALJ issued his recommended decision, again finding that Hardaway was not entitled to benefits. The ALJ found, *inter alia*, that Hardaway "has the residual functional capacity to perform the exertional and nonexertional requirements of work except for prolonged walking, prolonged standing, lifting in excess of 20 pounds, exposure to extreme temperature and humidity, and working in the presence of visible atmospheric pollutants." On April 25, 1985, the Appeals Council adopted the recommended decision of the ALJ, and it became the final decision of the Secretary.

On July 18, 1985, the district court entered an order reinstating the proceeding for further action by the court. The parties submitted cross-motions for summary judgment and on January 3, 1986, the district court entered an order affirming the decision of the Secretary.

The salient facts are as follows. Hardaway was born on October 15, 1927. He has an eleventh grade education. He worked as a journeyman electrician for General Motors in Detroit, Michigan, from 1949 to 1979. On June 7, 1979, Hardaway was admitted to Metropolitan Hospital. He was diagnosed as suffering from bronchial asthma and emphysema. Hardaway was discharged 6 days later on June 13, 1979. In the discharge summary, Dr. Cubberly, the attending physician, stated that Hardaway was "off work about a year ago with essentially the same problem as is observed currently." Dr. Cubberly further reported that Hardaway had made no real attempt at desensitization, had not followed up on allergy appointments, and had not had any medical visits in the 6 or 7 months prior to his hospitalization. Dr. Cubberly set July

[*] The Honorable Charles M. Allen, Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

9, 1979, as a tentative date on which Hardaway could return to work. Dr. Cubberly concluded that Hardaway was suffering from chronic bronchial asthma and chronic obstructive pulmonary disease.

On July 2, 1979, Hardaway received treatment for an asthmatic condition at the Emergency Room of the Metropolitan Hospital. He was diagnosed as having psychogenic hyperventilation and chronic obstructive pulmonary disease. He did not require hospitalization at that time.

On July 16, 1979, Hardaway was admitted to Providence Hospital. The admitting diagnosis was asthma and possible myocardial infarction. Upon admission, Hardaway was experiencing shortness of breath and wheezing. He also had some substernal chest pain. He was treated with drugs and given oxygen. As a result of this treatment, Hardaway's wheezing rapidly improved. He was also given nitroglycerine, which relieved his chest pain. Several cardiac examinations were performed on him during this hospitalization. All of these studies yielded normal results. During this hospitalization, Dr. Payne diagnosed Hardaway as suffering from acute asthmatic bronchitis and possible heart disease. Dr. Payne recommended that Hardaway be treated with a bronchodilator. Hardaway was discharged on July 27, 1979. At the time of discharge, the final diagnosis was acute myocardial infarction, asthma and angina pectoris. Both the asthma and angina pectoris were deemed to have been controlled at this point.

Hardaway was readmitted to Providence Hospital on January 2, 1980, due to an inflamed gall bladder. He underwent an exploratory laparotomy, and an omentectomy and appendectomy were subsequently performed. He was discharged with a good prognosis. During this hospitalization, a chest examination was performed and it showed clear lungs, normal size heart, and the overall evaluation was negative for any active disease.

On January 24, 1980, Hardaway was examined by Dr. Vicencio. A pulmonary function test was performed which indicated marked obstruction to air flow; how-

ever, significant improvement was achieved with a bronchodilator, raising respiration to almost normal limits. Dr. Vicencio reported that Hardaway would not be able to perform any job that required strenuous physical exertion, such as excessive walking, standing, climbing or heavy lifting. The doctor also stated that exposure to any respiratory irritants would aggravate Hardaway's pulmonary symptoms.

On February 12, 1980, Hardaway was examined by Dr. Ross who reported that he was suffering from severe asthmatic bronchitis and chest pain of undetermined origin. Dr. Ross opined that Hardaway's chest pain could be related to his pulmonary problem, rather than coronary in origin.

On May 28, 1980, Dr. Payne completed a report for the Michigan Disability Determination Program. He reported that Hardaway had been under his care for asthmatic bronchitis, angina pectoris, and hypertension since August 1979. Dr. Payne stated that Hardaway's hypertension had recently been well controlled. After performing pulmonary function tests, Dr. Payne concluded that Hardaway's respiration was significantly improved after use of a bronchodilator.

On March 31, 1981, Hardaway was examined by Dr. Maddox at the request of the Workers' Compensation Division of General Motors. Results of pulmonary function tests showed significant improvement after use of a bronchodilator; however, Dr. Maddox concluded that Hardaway was totally disabled due to asthma and heart disease.

On May 28, 1981, Hardaway was admitted to Metropolitan Hospital. The admitting diagnosis was chronic obstructive pulmonary disease and right bundle branch block. An examination of his chest showed clear lungs, unremarkable heart, aorta and diaphragm, with a slight degree of pulmonary emphysema. At the time of his discharge on June 2, 1981, the diagnosis was chronic bronchial asthma, chronic obstructive pulmonary disease, hypertension, and obesity. On June 16, 1981, Hardaway was treated at the Metropolitan Hospital Emergency room for an asthma attack. An

examination revealed that his vital signs and heart were normal. He did not require hospitalization, but was instructed to continue on his current medication.

On February 21, 1983, pulmonary function studies and blood gas analysis were conducted at the Metropolitan Hospital. The results of the pulmonary function studies showed that respiration improved significantly after use of a bronchodilator.

Hardaway was examined by Dr. Bedia on September 26, 1984. Examination of the lungs indicated fair air flow. A pulmonary function test again showed significant improvement after use of a bronchodilator. Examination of the heart showed no problems. Dr. Bedia's diagnosis was bronchial asthma and hypertension. Dr. Bedia concluded that Hardaway's hyperventilation was psychogenic in origin. Dr. Bedia indicated that Hardaway could stand and walk 2 out of 8 hours, sit 6 out of 8 hours, lift 20 pounds occasionally and 10 pounds frequently, and that he should avoid exposure to extreme heat, humidity, dust and fumes.

At the third administrative hearing, Hardaway testified that his daily activities are minimal. He stated that he just "piddles" around the house. He admitted that he alternates his medications. He stated that he takes his prescribed medications depending on how he feels, and how well he thinks they will work.

Dr. Peter G. Fotiu, a vocational expert, testified that based on Hardaway's relevant work history, he would be classified as a skilled electrician, and that the exertional level for such a job would be light to medium work. Dr. Fotiu stated that Hardaway had learned how to splice wires and connect them according to specifications, to install controls such as switches, relays, and circuit breakers and to connect power cables. Dr. Fotiu stated that Hardaway could perform the following jobs: electrical equipment assembler, tester or inspector of electrical equipment, and inspector of small motors. Dr. Fotiu stated that there are about 4,000 such jobs in the Detroit metropolitan area, and 8,000 such jobs in the State of Michigan.

Title II of the Social Security Act provides disability benefits for a claimant who demonstrates that he or she suffers a physical or mental disability within the meaning of the Act and that the disability arose before the expiration of the claimant's insured status. 42 U.S.C. § 423 (1982 & Supp. III 1985). Judicial review of the Secretary's decision that a claimant is not entitled to benefits is limited to a determination of whether the findings of the Secretary are supported by substantial evidence. *Id.* § 405(g) (1982). If the findings are supported by substantial evidence, they are deemed conclusive. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

■ Hardaway raises several objections to the disposition of his claim. He first claims that the Secretary's decision is unsupported by substantial evidence. He claims that three treating physicians, as well as a physician who examined him in a worker's compensation case, have concluded that he is totally disabled. A closer look at the evidence indicates that these four opinions are not as conclusive as Hardaway claims. Dr. Payne, who began treating Hardaway in July 1979, stated that Hardaway was disabled in a four line letter dated June 8, 1981, directed to "To Whom It May Concern." The letter, which was drafted the day before Hardaway's first administrative hearing, is unaccompanied by any medical reports or test results. Dr. Payne's conclusion that Hardaway is disabled is unsupported by the data he provided in other reports. For example, pulmonary function tests performed by him indicate that Hardaway's respiration improved significantly once bronchodilators were administered. He also reported that Hardaway's other incapacities, such as chest pains and hypertension, responded very well to treatment.

Dr. Cubberly, who has treated Hardaway for the longest period of time, reported in 1984 that Hardaway was "effectively totally disabled at this time." This report also noted that "at least part of [Hardaway's] trouble may well be related to exposure to dust at work." This indicates that although Hardaway may be unable to perform his past relevant work, he may nonetheless be able to engage in other substantial gainful activity. In 1979, Dr. Cubberly stated that Hardaway had neglected to follow a proper medical regimen.

On March 28, 1983, Dr. Kinhal reported that Hardaway was unable to perform "even nonstressful, sedentary work." However, pulmonary tests performed by the doctor indicated that respiration improved when Hardaway was given bronchodilators. Chest x-rays revealed clear lungs and no heart problems. Although pulmonary tests showed that he had severe hypoxemia, his respiratory problems could be effectively controlled with the use of drugs.

Other physicians who examined Hardaway concluded that his medical incapacities could be controlled by drugs. In 1981, Dr. Lewis identified asthma as Hardaway's most significant problem. Dr. Lewis reported that Hardaway's respiratory condition responded remarkably well to bronchodilator treatment. He concluded that Hardaway was capable of performing light work in an atmosphere free of pollutants. Dr. Vicencio, who examined Hardaway in 1980, reported that his respiratory condition improved significantly when drugs were administered. Dr. Vicencio did note, however, that Hardaway was incapable of performing jobs that required strenuous physical exertion. Dr. Bedia, who examined Hardaway on September 26, 1984, also reported that his respiration was significantly improved through the use of bronchodilators. Dr. Bedia did not reach any conclusion with regard to Hardaway's disability.

The record is replete with conflicting evidence. Hardaway's treating physicians conclude that he is disabled, while other consulting physicians have concluded that he is still capable of working. Several tests have indicated that Hardaway's physical problems are significantly improved when he uses prescribed drugs. There is also evidence indicating that Hardaway has refused to use or neglected to use the drugs. Upon reviewing the entire record, we conclude that there is substantial evidence supporting the Secretary's decision.

Hardaway also claims that the Secretary erred in failing to accord conclusive weight to the opinions of his three treating physicians that he was disabled. "The expert opinions of a treating physician as to the existence of a disability are binding on the fact-finder unless contradicted by substantial evidence to the contrary." *Bastien v. Califano*, 572 F.2d 908, 912 (2nd Cir.1978). The opinion of a treating physician is entitled to weight substantially greater than that of a doctor who has seen the claimant only once. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir.1978). However, the determination of disability must be made on the basis of the entire record and not on only some of the evidence to the exclusion of all other relevant evidence. *Id.* Therefore, because there was substantial evidence to the contrary, the Secretary was not bound by the opinions of the treating physicians that Hardaway was totally disabled.

Hardaway also challenges the manner in which the vocational expert was used. He first contends that the hypothetical questions posed to the vocational expert were deficient because they were "conclusory, inaccurate and incomplete." Specifically, Hardaway claims that the ALJ erred in asking the vocational expert to assume that he was capable of performing sedentary work. Hardaway argues that the assumption that he possesses the residual functional capacity to perform sedentary work is not supported by the evidence.

An ALJ may ask a vocational expert hypothetical questions, provided the question is supported by evidence in the record. Hardaway contends that there is no evidence to support a conclusion that he can perform sedentary work. However, at

least one doctor did state that Hardaway could perform sedentary work. Therefore, there is some evidence in the record to this effect. Consequently, the hypothetical questions were not erroneous.

Hardaway also claims that he was denied due process because he was not allowed to fully cross examine the vocational expert. During his testimony, the expert stated that there were 4,000 jobs in the Detroit area, and 8,000 in the state, that Hardaway was capable of performing. He then testified that about 75% of these employers did not allow smoking in the workplace. Hardaway's attorney then asked the expert to name 10 such places where smoking was not allowed. The ALJ found this question to be irrelevant and didn't allow the expert to answer it.

■ A review of the transcript indicates that Hardaway's attorney did have ample opportunity to cross examine the expert. The expert was under no obligation to name ten employers as requested by Hardaway's counsel. Neither the regulations nor the case law require that a vocational expert name specific employers. The Secretary's burden is to demonstrate the existence of jobs that the claimant can perform. This burden was met when the vocational expert testified that there were jobs in the area that Hardaway could perform. The expert was not required to go further and actually name specific employers. Consequently, the ALJ's ruling did not prejudice Hardaway.

■ Finally, Hardaway challenges the ALJ's finding that he was not a credible witness. Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference. *Houston v. Secretary of Health and Human Services*, 736 F.2d 365, 367 (6th Cir.1984). A review of the record reveals that several of Hardaway's statements were contradictory. The ALJ participated in three hearings involving Hardaway. He thus had ample opportunity to observe Hardaway as a witness. Therefore, we find no error with regard to his credibility finding.

Accordingly, the denial of benefits is AFFIRMED.