877 F.2d 62
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Diana Hale ASHCRAFT, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 88-5684.
 United States Court of Appeals, Sixth Circuit.
 June 20, 1989.
 
 Before MERRITT and BOYCE F. MARTIN, Jr., Circuit Judges, and LIVELY, Senior Circuit Judge.
 
 
 1
 LIVELY, Senior Circuit Judge. This is an appeal from a judgment of the district court affirming the Secretary's denial of SSI and disability benefits. The ALJ, whose opinion was adopted by the Secretary, found that the claimant has severe impairments of diabetes mellitus and low intelligence level, but that neither impairment nor the combination of impairments meets the "listings" of Appendix 1, Subpart P, Regulation No. 4. The ALJ further found that the claimant's impairments do not prevent her from performing her past relevant work as a short order cook and waitress.
 
 
 2
 The plaintiff Diana Ashcraft is 31 years old. Her diabetes was first diagnosed in 1972 when she was 14 years old. She has taken insulin in various doses since 1972, and has been hospitalized with uncontrolled diabetes on a number of occasions. Mrs. Ashcraft has experienced recurring diarrhea with accompanying dehydration and was diagnosed as having gastroenteritis on several occasions. In 1985 Mrs. Ashcraft consulted a clinical psychologist who determined that stress appears to exacerbate her diabetes, which in turn leads to severe depression.
 
 
 3
 A psychiatrist who conducted an evaluation for the Social Security Administration found four conditions: (1) probable personality disorder, (2) borderline mental retardation, (3) secondary anxiety and panic symptoms, and (4) secondary depression. The government then engaged a psychologist as a consultant. He administered a battery of tests and concluded that he did "not find any intellectual or psychiatric impairment which would constitute a major functional limitation.... She is probably just as capable of working as a cook as she was when she left her last job." Nevertheless, this consultant recommended that Mrs. Ashcraft be referred for vocational rehabilitation "where she might receive training or placement in a job which is within her range of capabilities." Despite this apparent contradiction between the conclusion and the recommendation, the ALJ relied heavily upon this report in deciding that the plaintiff is able to perform her former work.
 
 
 4
 Mrs. Ashcraft was examined at the University of Cincinnati Hospital's ophthalmology clinic in March 1985. She had never been examined by an ophthalmologist prior to that time, although she had experienced vision problems. The clinic concluded that she needed laser treatment for proliferative diabetic retinopathy and administered laser retinal treatments to both eyes. In November 1986, Dr. Weinberg of the University Hospital stated: "She (Mrs. Ashcraft) continues to have persistent optic disc neovascularization (excessive formation of blood vessels) of the right eye." At that time her visual acuity was 20/70 in the right eye and 20/40 in the left. Dr. Weinberg assessed her short-term prognosis as "fair" and her long-term prognosis as "poor ... since this disease process tends to be progressive."
 
 
 5
 Dr. Moser has been Mrs. Ashcraft's regular treating physician since 1984. He submitted three statements in which he found the plaintiff unable to be gainfully employed for any sustained period of time. He stated that the plaintiff's diabetes is "severe" and "brittle" and that it is frequently out of control. Dr. Moser submitted a general medical report with his second opinion letter dated April 23, 1985. The report showed that the plaintiff was taking 40 to 50 units of Lente insulin daily "with poor control." Dr. Moser's office notes and records of frequent hospitalization and outpatient treatment beginning in 1984 supported this opinion. Several different doctors treated Mrs. Ashcraft on these occasions, and all agreed that she had difficulty controlling her diabetes.
 
 
 6
 No physician stated that the plaintiff was able to perform gainful employment. The consultative psychologist who thought that Mrs. Ashcraft could perform her duties as a short order cook as well in October 1985 as when she left her last job in April 1983 was the same witness who recommended vocational rehabilitation for "a job which is within her range of capabilities." The ALJ gave more credence to this report than to Dr. Moser's. He stated that Dr. Moser's opinion had no supporting clinical findings. No one disputed that Mrs. Ashcraft has juvenile diabetes mellitus, that it is "brittle" and that it is poorly controlled, and this diagnosis is supported by an abundance of medical records. The ALJ appeared to base his finding of no disability on two factors. First, he concluded that the diabetes had caused no end organ damage. Yet, eyes are listed as one of four end organs in Sec. 4.00C of the listings, which relates to hypertensive vascular diseases. Presumably eyes are "end organs" for all purposes. Mrs. Ashcraft had retinal eye damage that resulted directly from her diabetes. Second, the ALJ accepted the psychologist's opinion that the plaintiff was as capable of working as a short order cook as she had been previously. This opinion was based only on a psychological evaluation, since the consultant was not qualified in any other field.
 
 
 7
 The ALJ failed to give proper consideration to the entire record. When Mrs. Ashcraft quit her job in 1983 she had never been examined or treated by an ophthalmologist. The records from the University Hospital clinic show that serious retinal problems had developed by 1985, requiring multiple laser treatments, and causing a poor long-term prognosis. Both the ALJ and the magistrate emphasized that this poorly educated, almost illiterate claimant, found by a psychiatrist to have borderline mental retardation, told a consulting psychologist that she quit working in 1983 to move in with her boyfriend (now her husband) who earned enough to support the two of them and his nine year old son. Her reason for leaving her last employment is totally beside the point if the record discloses a worsening of her severe chronic impairment that would make it impossible for her to return to that work.
 
 
 8
 Mrs. Ashcraft has poorly controlled diabetes. The recently diagnosed problem with both eyes is a manifestation of a condition related to her impairment that was not present when she was employed between 1979 and 1983. Dr. Moser specified that Mrs. Ashcraft's disability is caused by "the vagaries of her diabetes." These "vagaries" include frequent attacks of gastroenteritis, resulting in dehydration, and persistent optic disc neovascularization, in addition to an inability to control her glucose levels. Since there was no contradictory medical evidence, the ALJ erred in failing to give substantial weight to Dr. Moser's opinion. Hardaway v. Secretary of H.H.S., 823 F.2d 922, 927 (6th Cir.1987); Hepner v. Matthews, 574 F.2d 359, 362 (6th Cir.1978).
 
 
 9
 The ALJ also erred in his treatment of the psychological record. Mrs. Ashcraft did not claim that she was psychotic or out of touch with reality. She claimed, and the comprehensive care center clinical psychologist agreed, that she was depressed because of the frustrations she experienced in attempting to cope with her chronic diabetes. The ALJ emphasized, however, that the consulting psychiatrist found no delusions, hallucinations, or thought disorders. The clinical psychologist related Mrs. Ashcraft's "severe depression" to exacerbations of diabetes brought on by stress. The ALJ failed to consider the plaintiff's emotional problems as she presented them--nervousness, irritability and depression resulting from her inability to control her diabetes.
 
 
 10
 One other aspect of the ALJ's decision is puzzling. The ALJ called a vocational expert to testify at the hearing. After this witness had testified that he had had an opportunity to review the exhibits, including medical and hospital records, the ALJ propounded this question:
 
 
 11
 Would you tell the court at this time if you would please, based on the testimony that you've heard here this afternoon, taking into account please claimant's age, education, and past work experience would you feel any jobs in existence in the national economy that she could perform?
 
 The VE answered:
 
 12
 No sir, the basis of that would be her own statements that she deteriorates from her emotional standpoint even any kind of stressful situation and this stressful situation can be defined as anything from sitting, standing, or walking for periods up to two hours.
 
 
 13
 This was the only question put to the witness, and the ALJ did not mention the question or answer in his decision. Even though the VE was familiar with the medical records, the ALJ asked him to base his answer solely on the testimony he heard at the hearing. He did not ask the witness to consider the physicians' statements, hospital records, or reports of examination. The plaintiff was entitled to an explanation of the ALJ's reasons for disregarding this testimony. If the testimony was rejected because it was based entirely on Mrs. Ashcraft's subjective complaints, that deficiency was of the ALJ's making and could have been cured by a follow-up question in which the expert would have been asked to express his opinion on the basis of the entire record.
 
 
 14
 The ALJ, the magistrate and the assistant United States attorney all approached this case with at least one erroneous assumption, as stated in the Secretary's brief before this court: "Since plaintiff performed her past work with her impairment, and since there has been no significant worsening of her condition, she should not be found disabled." Brief at 17. The record clearly depicts a worsening condition. From the record, the plaintiff was not treated between 1976 and 1984. Apparently the diabetes was reasonably well controlled during this period. She quit working in 1983. Between 1984 and 1987, she had a series of treatments in hospitals, emergency rooms and outpatient clinics. There were repeated findings of uncontrolled diabetes. The diabetes-related problem with her eyes was first diagnosed in 1985 and was labeled "persistent" with a poor long-term prognosis in 1986. At about the same time Mrs. Ashcraft was treated for depression and began taking "nerve pills" prescribed by one of her doctors.
 
 
 15
 The judgment is vacated, and the case is remanded to the district court for further remand to the Secretary. The Secretary will conduct further proceedings and make findings with respect to the present condition of the plaintiff and will redetermine her claim for disability benefits on the basis of the entire record.