904 F.2d 36
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jim OVERTON, Claimant,
v.
SECRETARY, HEALTH AND HUMAN SERVICES, Respondent.
 No. 89-6249.
 United States Court of Appeals, Sixth Circuit.
 June 5, 1990.
 
 Before KENNEDY and WELLFORD, Circuit Judges, and CHARLES W. JOINER,* Senior District Judge.
 PER CURIAM:
 
 
 1
 The claimant, Jim Overton, appeals from the district court's order granting summary judgment in favor of the Secretary, effectively denying claimant the social security benefits sought. We find that the denial of benefits was supported by substantial evidence and, accordingly, affirm.
 
 
 2
 The claimant filed an application for benefits on December 18, 1984, at age fifty-four, claiming that he became disabled in 1978 due to a back problem and a nervous condition. On appeal, however, the claimant relies primarily on his alleged mental impairment. The claimant last met the special earnings requirement on December 31, 1983. An ALJ determined that the claimant was not disabled after a hearing in 1985. The ALJ concluded that neither claimant's back pain nor his alleged mental disorder was severe enough to prevent him from performing his past relevant work as a machine operator, which the ALJ characterized as light work.
 
 
 3
 After claimant sought judicial review, a Magistrate, upon reference, concluded that there was not substantial evidence to support the ALJ's conclusion that the claimant could perform medium work. He therefore concluded that the claimant was disabled and recommended that the Secretary award the claimant benefits. The district court, on the other hand, rejected this recommendation, directing that the Magistrate review the case.
 
 
 4
 Upon remand, the Magistrate considered the reports of two doctors who were of the opinion that the claimant was disabled by his mental impairment. He also reviewed "Disability Determination Rationale" reports and concluded that either these reports did not relate to the relevant period, prior to December 31, 1983, or that they were not supported by objective medical evidence. Upon remand, the Magistrate held that the claimant had failed to prove that he was disabled during the insured period, and he recommended that the complaint be dismissed. The district court then granted summary judgment in favor of the Secretary and this appeal ensued.
 
 
 5
 Claimant had a seventh grade education and had worked as a machine operator for most of his life. He testified that since he had stopped working in 1978, he had suffered bouts of severe depression and nervousness. His wife confirmed his testimony that he had withdrawn socially and that he no longer engaged in activities which he had previously enjoyed. He also testified that his mental problems interfered with his ability to work during the last six months he was employed. Other evidence supported a view that claimant quit working simply because he decided to retire after working for thirty years. There was testimony that claimant regularly hunts and fishes and sometimes works in the garden. He often does the shopping and can carry ten to twenty-five pounds of pet food. Although he has recently become more withdrawn than formerly, Overton still visits neighbors.
 
 
 6
 Overton testified that he quit working because of a problem with his nerves which caused him to have dizzy spells. He was seen in March of 1975 by Dr. C. Donald Stevens, psychiatrist-neurologist, for treatment of this condition. The doctor was unable to determine any physiological cause of this condition; he prescribed for claimant Valium and Bentyl which immediately improved his condition.
 
 
 7
 Additional reports from Dr. Stevens indicated that the claimant has long been troubled by a psychoneurotic anxiety reaction with depression. He noted that the claimant suffered from dizziness, blurred vision, and memory lapses. Dr. Stevens opined that the claimant was therefore disabled.
 
 
 8
 IQ tests showed that claimant has a performance IQ of 77, a verbal IQ of 72, and a full scale IQ of 76. Psychological tests performed after 1983 indicated that claimant's mental impairment would most likely preclude him from entering competitive employment.
 
 
 9
 A vocational expert testified that the claimant's impairments prohibited him from performing his past relevant work. The expert stated, however, that he could perform work which would not require a great deal of concentration. The expert concluded that Overton was capable of work as a tool room attendant, a night watchman, or a custodian.
 
 
 10
 On appeal, claimant challenges the Secretary's rejection of the Dr. Stevens' conclusion that he was disabled and the ultimate conclusion that claimant failed to present substantial evidence that he was disabled prior to December 31, 1983. Overton contends that the ALJ failed to give proper weight to Dr. Stevens' opinion as a treating physician. The Secretary argues that Dr. Stevens is not a treating physician because the claimant visits him only once or twice a year, that Dr. Stevens' conclusions are not supported by objective medical evidence, and that other medical evidence in the record contradicts Dr. Stevens' conclusion.
 
 
 11
 While deference should be given to the opinion of the treating physician, the ALJ may properly reject a treating physician's conclusion that a claimant is disabled where such a conclusion is not supported by objective evidence in the record. Gardner v. Heckler, 745 F.2d 383, 391 (6th Cir.1984). The Secretary's decision to deny benefits will be upheld, moreover, if it is supported by substantial evidence even though the treating physician's opinion is to the contrary. Hardaway v. Sec., H.H.S., 823 F.2d 922, 927 (6th Cir.1987).
 
 
 12
 Mental illness is not as easily substantiated by laboratory data as is a physical impairment.
 
 
 13
 "[A] psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain clinical manifestations of medical illness.... [W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques."
 
 
 14
 Blankenship v. Bowen, 874 F.2d 1116, 1121 (6th Cir.1989) (citations omitted). In the present case there is no evidence of "diagnostic techniques." The only medical evidence concluding that the claimant had a severe medical impairment prior to December 31, 1983 is from Dr. Stevens. Dr. Stevens stated that the claimant has suffered from this mental impairment since at least 1975 and that it was and continues to be severe enough to preclude him from performing any type of work. Claimant was hospitalized for his mental problem in 1975, and he responded well to treatment and was released shortly thereafter; this is the only serious bout of depression claimant has suffered. He continued to work until September of 1978. A consultative report from psychologist Dr. Amble, in December of 1986, established that the claimant was then suffering an impairment "which would likely preclude him from a capacity to enter competitive employment on a routine and regular basis." There is no other evidence in the record that the claimant was disabled prior to December 31, 1983.
 
 
 15
 On the other hand, Dr. Lange, in February of 1985, concluded that the medical evidence "reveals no evidence of mental impairment of significance." Dr. Wagner concluded that there was "insufficient medical evidence with which to determine the severity of any mental impairment prior to December 31, 1983." Dr. Stevens does not substantiate his conclusions by describing what kinds of tests he ran on the claimant or identify any other report which proves that claimant was severely disabled prior to the expiration of his insured status. In 1983 Dr. Stevens noted that Overton suffered from a "gastro-psycho-physiological reaction." There is little evidence that claimant's mental state restricted his ability to function normally during the relevant period. There was testimony that he often hunted, fished, and engaged in other normal activities prior to December 31, 1983. The ALJ, as arbiter of witness credibility, could properly reject based on other medical evidence the claimant's and his wife's testimony that he was severely disabled prior to 1983 or 1984. While claimant may presently suffer from a severe mental impairment, we conclude that the Secretary's conclusion that the claimant did not suffer from a disabling mental impairment prior to December 31, 1983 is supported by substantial evidence.
 
 
 16
 We accordingly AFFIRM the judgment of the district court.
 
 
 
 *
 The Honorable Charles W. Joiner, Senior United States District Judge for the Eastern District of Michigan, sitting by designation