67 F.3d 299
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sylvia CARDELLA, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
 No. 95-1044.
 United States Court of Appeals, Sixth Circuit.
 Sept. 28, 1995.
 
 1
 Before: JONES and DAUGHTREY, Circuit Judges, and GIBSON, District Judge.*
 
 ORDER
 
 2
 Sylvia Cardella appeals a district court judgment which affirmed the Secretary's denial of her applications for social security disability benefits and supplemental security income. The parties have waived oral argument, and the panel unanimously agrees that oral argument is not needed in this case. Fed.R.App.P. 34(a).
 
 
 3
 Cardella alleged that she became disabled on July 17, 1989, due to lower back pain. An Administrative Law Judge ("ALJ") found that Cardella's impairments were severe, even though they were not equivalent to any of the impairments that are listed in Appendix 1 to the regulations. The ALJ found that Cardella could not perform her past work. However, he also found that Cardella's testimony was not fully credible and that she could perform a significant range of sedentary work. Thus, the ALJ determined that Cardella was not disabled by relying in part on the testimony of a vocational expert ("VE"). This opinion became the final decision of the Secretary on February 17, 1994, when the Appeals Council declined further review.
 
 
 4
 On December 13, 1994, the district court adopted a magistrate judge's recommendation and awarded summary judgment to the Secretary. It is from this judgment that she now appeals.
 
 
 5
 Judicial review of the Secretary's decision is limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards in reaching her conclusion. Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The scope of our review is limited to an examination of the record only. We do not review the evidence de novo, make credibility determinations nor weigh the evidence.
 
 
 6
 Brainard v. Secretary of Health and Human Servs., 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted). The Secretary's decision must be affirmed if it is supported by substantial evidence, even if this court might have decided the case differently based on substantial evidence to the contrary. Bogle v. Sullivan, 998 F.2d 342, 347 (6th Cir.1993).
 
 
 7
 The medical evidence is somewhat inconsistent. In the summer of 1989, testing indicated that Cardella had a herniated disc at L3-L4, but there was no electromyographic evidence of radiculopathy. In September 1989, a neurologist reported that Cardella had a ruptured disc. Cardella returned to work, but she injured her back again on December 27, 1989, and has not worked since that time. X-rays taken in March 1990 did not indicate significant spinal stenosis, although they did demonstrate minimal bulging at L3-L4. On June 4, 1990, an orthopedic surgeon, Dr. Kivi, reported that Cardella's physical examination did not demonstrate objective evidence of abnormality in her lumbar spine or lower extremities, and stated that there was "clearly no evidence whatever of a ruptured intervertebral disc."
 
 
 8
 On June 22, 1990, Cardella's treating physician, Dr. Melonakos, reported that she was not responding to conservative treatment. In July, he noted that an EMG had confirmed low grade radiculopathy. In August, he reported a positive straight leg raising test on the left side, although there was no paresthesia, areas of decreased sensation or signs of weakness. In September, he reported positive straight leg raising tests on both sides, although there were no signs of atrophy or dysesthesia. In November, Dr. Melonakos again diagnosed Cardella as having a herniation and recommended a neurological consultation.
 
 
 9
 In March 1991, an MRI of the lumbosacral spine was consistent with a disc herniation at L3-L4. However, in April 1991, an examining neurologist noted that Cardella could bend fairly well and that she had no sciatic notch tenderness, weakness or sensory deficit. He reported that she could walk on heels and toes, step up on a foot stool and perform the straight leg raising test without pain. He stated that surgery was not indicated. In August 1991, a different neurosurgeon reported that Cardella had a large disc herniation and recommended surgery. In September 1992, an orthopedist, Dr. Knocke, also reported evidence of a disc herniation, but there is no indication that surgery has ever been performed.
 
 
 10
 Cardella's testimony indicates that she is completely disabled. The ALJ credited this testimony to some extent by finding that Cardella could perform only a limited range of sedentary work. The ALJ specifically stated that he was not employing a sit and squirm test. His opinion also indicates that he considered the medical record as well as Cardella's activities, medications and other treatments. Moreover, the ALJ's finding that Cardella could perform a limited range of sedentary work is supported by substantial evidence in the medical record. This evidence also provides substantial support for the ALJ's finding that Cardella was not fully credible. See Bogle, 998 F.2d at 348; Blacha v. Secretary of Health and Human Servs., 927 F.2d 228, 231 (6th Cir.1990) (per curiam).
 
 
 11
 The ALJ's finding that Cardella could perform a limited range of sedentary work is supported by the testimony of a medical expert, Dr. Iqbal. He testified that Cardella could lift up to 20 pounds, that she could climb a flight of stairs and that she could stand or sit for up 2 hours at a time without changing her position. Cardella now argues that the ALJ erred by giving more weight to Dr. Iqbal's testimony than he gave to the reports of her treating physician. In July 1991, Dr. Melonakos reported that Cardella should lift no more than 5 or 6 pounds, that she should stand in one position for no longer than 15 or 20 minutes and that she may need to lie down periodically because of her pain. A residual capacities assessment following Dr. Knocke's report also indicates that Cardella can lift or carry only 2 to 5 pounds and that she can stand or walk only 30 minutes without interruption, and no more than 2 hours in an 8-hour day.
 
 
 12
 A treating physician's opinion is afforded substantial weight, but the Secretary is not bound by such an opinion if there is substantial evidence to the contrary. Bogle, 998 F.2d at 347-48; Hardaway v. Secretary of Health and Human Servs., 823 F.2d 922, 927 (6th Cir.1987) (per curiam). In the present case, the ALJ properly relied on Dr. Iqbal's testimony because Dr. Melonakos's report conflicts with other evidence in the medical record. See Hale v. Secretary of Health and Human Servs., 816 F.2d 1078, 1083 (6th Cir.1987) (per curiam). Dr. Clark indicated that Cardella could be rehabilitated to do less stressful work. Dr. Kivi stated that it would be helpful for Cardella to perform light work. Dr. Anderson also indicated that Cardella could perform a full range of light work. Dr. Harroun indicated that Cardella could perform medium work, although her ability to push and pull was limited. When considered with Dr. Iqbal's testimony, these reports provide substantial support for the ALJ's finding that Cardella could perform a limited range of sedentary work. See Atterberry v. Secretary of Health and Human Servs., 871 F.2d 567, 570 (6th Cir.1989); Hale, 816 F.2d at 1083.
 
 
 13
 Since Cardella could not perform her past work, the Secretary had the burden of showing that a significant number of other jobs were still available to her. Cardella has not raised any direct challenge to the vocational proof. We note, nonetheless, that there was evidence in the medical record to support the assumptions contained in the ALJ's hypothetical questions to the VE, and the VE's response satisfied the Secretary's burden of showing that a significant number of sedentary jobs were available to Cardella despite her impairments. See Hardaway, 823 F.2d at 927-28.
 
 
 14
 Accordingly, the district court's judgment is affirmed.
 
 
 
 *
 The Honorable Benjamin F. Gibson, United States District Judge for the Western District of Michigan, sitting by designation