70 F.3d 115
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dorothy JONES, Plaintiff-Appellant,
v.
COMMISSIONER OF SOCIAL SECURITY, Defendant-Appellee.
 No. 94-3987.
 United States Court of Appeals, Sixth Circuit.
 Nov. 8, 1995.
 
 Before: LIVELY, RYAN and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Dorothy Jones, appeals the decision affirming the denial of supplemental security income under Title II of the Social Security Act, 42 U.S.C. Sec. 405, by the Secretary of Health and Human Services (now the Commissioner of Social Security). Jones contends that the Commissioner's decision is not supported by substantial evidence and that the decision was, in part, based upon an erroneous hypothetical question. For the reasons stated herein, we affirm the district court's judgment for the Commissioner.
 
 I.
 A. Factual History
 
 2
 Jones has a high school education and some college level instruction. As for past work experience, she originally claimed that she had none. However, she later conceded that she had worked as a janitor between 1977 and 1980. She also worked as a hospital aide and restaurant bus person in the 1970's. Jones alleges a variety of illnesses including cephalgia (headaches), dysthymic disorder (bad moods), myalgia (muscle pains and aches), bronchial asthma, chronic knee pain, hiatal hernia, anxiety, dyspepsia, and sinusitis. The Administrative Law Judge ("ALJ") determined that Jones' ailments left her with a residual functioning capacity to perform medium work.[1]
 
 B. Procedural History
 
 3
 Jones filed an application for supplementary security income on June 12, 1989. On March 22, 1990, the ALJ determined that she was not entitled to supplementary security income based on her impairments. The Appeals Council remanded the case to the ALJ to determine if Jones had a mental impairment. After another hearing, the ALJ found that she was not disabled and, thus, not entitled to supplementary income. The Appeals Council affirmed. Jones filed for judicial review, and the district court affirmed the Commissioner's decision.
 
 II.
 
 4
 This court has a limited scope of review as provided by statute and caselaw: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. Sec. 405(g); Wyatt v. Commissioner of Health & Human Servs., 974 F.2d 680, 683 (6th Cir.1992) (citation omitted). It is also this court's duty to decide whether the Commissioner used the appropriate legal criteria in reaching a conclusion. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.1984). Therefore, in reviewing the ALJ's determination in the present case, this court is bound to accept the ALJ's findings "if those findings are supported by substantial evidence on the record as a whole." Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060, 117 L.Ed.2d 239 (1992) (citation omitted).
 
 
 5
 To be entitled to supplemental security income, Jones must meet two requirements. She must first prove an impairment as defined in the statute, and she must then show an inability to perform any substantial gainful activity as a result of her impairment. Skinner v. Commissioner of Health & Human Servs., 902 F.2d 447, 449 (6th Cir.1990) (citing 42 U.S.C. Sec. 423(d)(1)(A)). The ALJ conducted a five-step evaluation of Jones's claim as required by 20 C.F.R. Sec. 404.1520. The ALJ determined that her impairments do not meet the severity required to achieve "disability" status. After careful consideration of the evidence, the ALJ found that Jones has the physical capacity to do medium work and that she retains the ability to perform her past relevant work as a janitor.
 
 
 6
 Jones contends that the ALJ's decision contradicted all of the "uncontroverted" evidence of record because of the ALJ's desire to concoct a record to "satisfy his own convictions." This argument is without merit because the evidence was, at best, conflicting, not uncontroverted. The ALJ developed a record replete with medical evidence of Jones' functional loss. Five doctors provided evaluations. Initially, Dr. Jacaban provided records as Jones' treating physician prior to her application for disability benefits. Jacaban concluded that she is, "employable; jobs within the confined [sic] of her educational and emotional backgrounds." Jacaban's opinion is afforded great weight because of his treatment relationship with Jones. 20 C.F.R. Sec. 416.927(d)(1) & (2); Cohen v. Commissioner of Health & Human Servs., 964 F.2d 524, 528 (6th Cir.1992) (citation omitted).
 
 
 7
 Four other doctors specifically considered the factors of functional loss associated with mental impairment: 1) daily living activities; 2) social functioning; 3) concentration, persistence, and pace while working; and 4) deterioration of condition while in a work setting. 20 C.F.R. Sec. 416.920a. These factors address the functional limitations which may interfere with the ability to work. If two or three of the factors meet certain legal standards, the regulations require a finding of disability. Abbott v. Sullivan, 905 F.2d 918, 923-24 (6th Cir.1990) (citations omitted). These legal standards require "marked" limitations in the two areas of daily living activities and social functioning. None of the doctors rated Jones in these two areas with "marked" limitations, although Dr. Rain rated her as "poor." The ALJ discounted Dr. Rain's opinion based upon Rain's conclusion that "test sabotage [by Jones] could well have been a significant feature" of the results. The ALJ also noted Jones' display of cash bills to Dr. Rain coupled with her question, "How much money do you get to help people get social security income?" Similarly, Dr. Virgil noted that Jones's intelligence was higher than tests indicated because of possible sabotage. In fact, the evidence reveals that Jones does not experience marked restrictions in daily activities nor in social functioning as she is able to fully care for her four school-age children, clean her home, shop, watch television, visit relatives, and attend church on a regular basis. See Blancha v. Commissioner of Health & Human Servs., 927 F.2d 228, 231 (6th Cir.1990) (ALJ may consider household and social activities in evaluating disability). The doctors did not unanimously agree on even one factor of potential mental impairment. Thus, the medical evidence cannot fairly be described as uncontroverted proof that Jones is unable to perform work activity.
 
 
 8
 The record shows that Jones is able to understand simple job instructions and perform simple tasks. Jones offered subjective testimony to the contrary. The ALJ gave less weight to her testimony, however, because of her failure to disclose prior work experience and her apparent sabotage of medical test results. We defer to the ALJ's credibility determination of Jones' subjective claims of disability because there were manifest discrepancies in the evidence. See Stanley v. Commissioner of Health & Human Servs., 29 F.3d 115, 118 (6th Cir.1994).
 
 III.
 
 9
 Jones also contends that the ALJ erroneously relied upon an inaccurate question posed to the vocational expert. We find this contention without merit. The ALJ's hypothetical question is consistent with Jones' condition as determined by Doctors Virgil and Zwissler. The ALJ may pose a hypothetical question as long as the question is based upon some evidence in the record. Hardaway v. Commissioner of Health & Human Servs., 823 F.2d 922, 927-28 (6th Cir.1987). This rule applies even if the hypothetical is based on only one doctor's opinion. Id. In the present case, the ALJ's question is obviously supported by the evidence of record as the question is consistent with at least one doctor's opinion.
 
 
 10
 The Commissioner's decision is supported by substantial evidence.
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 Jones does not contest the ALJ's finding below with respect to her exertional impairments, but rather argues her non-exertional impairments were ignored by the ALJ