NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0325n.06

No. 13-5929

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
*Apr 25, 2014*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ALICIA SARAI SMITH, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| COMMISSIONER OF SOCIAL SECURITY | ) | TENNESSEE |
| ADMINISTRATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:  GRIFFIN, WHITE, and STRANCH, Circuit Judges.

PER CURIAM.  Alicia Sarai Smith appeals the district court's judgment affirming the denial of her application for supplemental security income (SSI) benefits.

In 2008, Smith's mother filed an application for SSI benefits on her behalf, alleging that Smith had been disabled due to borderline retardation and attention deficit disorder since her birth on November 1, 1993.  PID 164.  After the Social Security Administration denied the application, Smith requested a hearing before an administrative law judge (ALJ).  The ALJ denied Smith relief, and the Appeals Council declined to review the case.  The district court affirmed the denial of Smith's application.  PID 55.

On appeal, Smith raises the following arguments:  (1) the ALJ erred by concluding that she did not meet or equal the regulatory listing for attention deficit hyperactivity disorder (ADHD); (2) the ALJ erred in discounting the medical opinion of examining psychologist Dr. David Pickering, who concluded that Smith had significant functional limitations; (3) the

ALJ erred by failing to properly address the credibility of Smith's mother's testimony; and (4) the ALJ's denial was not supported by substantial evidence.

Background

In her early years, Smith showed several signs that she was struggling in school. In October of 2000, her first-grade teacher recommended Smith be given a psychoeducational evaluation, after noting that she was performing below grade level, had difficulty recalling the letters of the alphabet and their respective sounds, and had math skills below grade level. PID 225. The evaluation included an IQ test indicating that Smith fell within the borderline range of intellectual functioning. PID 226. Smith was in special education classes from first through third grades. PID 342. However, in 2003, Smith was placed in regular classes. *Id.* School records from Jackson-Madison Middle School indicate that in 2006-2007, Smith was in seventh and eighth grades, earning A's, B's, and C's in her primary subjects, an "E" in "Computer," and "S" in other subjects. PID 251. Her report card for grade eight indicates she was taking Honors Language and Honors Algebra. *Id.* In March 2008, Smith took a series of tests showing she was proficient in reading and language arts, below proficient in science, proficient in social studies, and partially proficient in math. PID 445–48. In 2008, before high school, Smith's mother decided to begin homeschooling Smith through the Gateway program. PID 40–41.

Smith underwent counseling at Quinco Mental Health Center beginning in September of 2008, where she initially reported that she became "overwhelmed with a lot of work," had "some trouble falling asleep" and "used to argue with teachers a lot." PID 289–91. Records from Quinco note in October of 2008 that Smith was hyperactive and often in trouble at school for being restless and disruptive, but as she got older, these behaviors lessened. PID 285. In November of 2008, Smith's mother reported success with the medication Adderall, stating she

was surprised by "how much of an improvement she had seen immediately." PID 298. It was also reported that Smith completed a challenging puzzle, and, though she had difficulty, she did not give up or become distracted. *Id.* In December 2008, Smith's focus was "much better," her grades were improving, her mood was stable, and she tolerated her medication well. PID 283. In June of 2009, Smith's mother reported that Smith's grades with Gateway were good, she could "tell the difference when Smith takes her meds" and reported that Smith was able to complete an entire Gateway lesson in one sitting (rather than the four pages required). PID 384. In January of 2009, Smith had been out of medication for three weeks. PID 281. Her mother indicated that her medication was working, expressed concerns that Smith was not focusing as well, and requested that Smith restart medication at her current dose. *Id.* Smith's mood was stable, with satisfactory sleep and appetite. *Id.* Her medication was restarted. *Id.* As of January 27, 2010, Smith was still being homeschooled with Gateway, was participating in church and community activities, had no problems with Adderall, and her sleep and appetite were good. PID 357.

On February 17, 2009, a state agency psychological consultant, Dr. Rebecca Joslin, reviewed Smith's file and determined that she had less than marked limitations in the functional domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself. PID 319–322. Dr. Joslin also reported that while Smith had difficulty focusing when not on medication, Smith improved when she took her medications, noting Smith's improved focus, grades, mood stabilization, sleep, and appetite. *Id.* Dr. Joslin concluded that when on medication, Smith does not meet, medically equal, or functionally equal the Listings. PID 319, 324. On April 6, 2009, another state psychological consultant, Dr. Larry Welch, reviewed Smith's file and affirmed Dr. Joslin's conclusion. PID

327–332. He further determined that Smith has no limitations in moving about or manipulating objects, or in health and physical well-being. PID 330. He noted that there was no allegation of a worsening of any previously documented mental impairment or any new mental impairment. PID 332.

The Commissioner, in his discretion, did not order a consultative examination.[1] Smith's legal representative sent her for an "independent record review and consultative examination" with Dr. David Pickering, PhD in Child Psychology, Diplomate in Clinical Psychology, and Member of the American College of Forensic Evaluators. Appellant's Br. at 6; PID 436–37. Dr. Pickering evaluated Smith and reviewed her file in April 2010. PID 431–35. He diagnosed Smith with attention deficit hyperactivity disorder, predominantly inattentive type, anxiety disorder not otherwise specified, and borderline intellectual functioning. PID 431. He noted that according to Quinco, Smith, and her mother, Smith was "responding well" to Adderall. *Id*. He also noted that her school records from an early age to her most recent evaluation within the school system document that her intellectual ability falls within the borderline range. *Id*. He noted Smith was unduly anxious, and, although she denied she was anxious, she sat on the edge of her chair, leaned forward "as if ready to bolt for the door," and kept her arms wrapped around herself. *Id*. He noted that Smith's mother reported Smith engages in excessive hand washing. *Id*.

Dr. Pickering completed a form indicating that Smith has marked inattention/impulsiveness, marked impairment in age-appropriate cognitive/communicative functioning and social functioning, and marked difficulties maintaining concentration,

---

[1]*See* 20 C.F.R. § 416.917 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.").

persistence, or pace. PID 433. At the bottom of the form, Dr. Pickering states: "Primary dx of ADHD, predominantly inattentive type with comorbid anxiety d/o, which complicates/exacerbates attention, concentration problems." *Id.* He also determined Smith had a "marked" impairment in the domains of acquiring and using information, attending and completing tasks, "moderate to marked" impairment in interacting and relating to others, and "moderate" impairment in health and physical well-being. PID 434–35. He stated that Smith is homeschooled due to difficulties in relating to peers in public high school and that she needs a degree of supervision/reminders. *Id.* He further noted that Smith reports she is sometimes noncompliant with medication, which he noted has been confirmed by documentation from Quinco. *Id.*

Smith testified on April 20, 2010. She is 16, in homeschool, testified homeschool is "ok" and that her right eye is blurry. PID 33. She testified that she is taking Adderall and it is controlling her ADHD. PID 34. She further testified that while in school, she had problems with being late for class, speaking out, getting up, and disrupting other students. PID 35. She was sometimes able to keep up with classwork and earned "more about B's and C's." *Id.* She testified that she was in special education until Fourth grade and began homeschooling because she "didn't want to go to Northside." PID 36. When asked if she has any problems with nerves or being anxious, she testified that she does. *Id.* When asked if that was related to Northside, she testified, "[p]robably a little bit." *Id.* Smith further testified that she has trouble with math and English and has trouble remembering things. PID 37. She testified that in regular classes, she had trouble getting homework done, but that she does better by herself with one-on-one attention. PID 38. Smith goes to Quinco Medical Center approximately once per month. *Id.*

Smith further testified that she has no difficulty sitting, standing or walking, and that she does chores at home such as washing dishes and taking out the trash. PID 33. When asked if she has physical problems that prevent her from doing what every other sixteen year old can do, she testified "[n]ot that I can think of." PID 34. She further testified that she goes out with other kids to the mall, the skating rink, Wal-Mart, "other random places," and has several friends from church. PID 37–38.

Smith's mother, Yolanda Carmon, also testified on April 20, 2010. Ms. Carmon testified that she took Smith out of school because she was "constantly" at the school "almost every day" because Smith was "unnecessarily getting out of class." PID 40. Smith did well in small groups, but did not do well in bigger groups. *Id.* Ms. Carmon decided to take her out of school because she didn't want her to go to high school where she wouldn't get time with her teachers. *Id.* Ms. Carmon further testified that Smith was suspended only approximately three times but was in detention frequently for disrupting class. PID 40–41. She testified that Smith's grades were "B, C, D" and she "knew she could do more," but the classes were too large to give Smith one-on-one attention. PID 41.

In addition, Ms. Carmon testified that Smith has problems paying attention, understanding oral instructions, and a serious problem with comprehending written material. PID 41–42. She further testified that Smith has a serious problem with math and with recalling previously-learned material, requiring Ms. Carmon to start over or remind Smith what they were talking about. PID 42–43. When Smith is given a test at home, she is given more time to study than the limited time at school. *Id.* When asked if Smith still has a problem paying attention when Ms. Carmon speaks to her, Ms. Carmon testified that if it's simple, such as one instruction, she does not, but if she is given multiple instructions, Smith needs some of them repeated. PID

44. She further testified that Smith has a very serious problem refocusing. *Id*. When asked whether Smith would be able to return to regular school and compete with other students, Ms. Carmon testified: "It's 50-50. I see how she is doing in school, how she doing at home, but I know that's because I took her out and she has meds and, plus, it's a smaller group." PID 45. Smith has not been back in school since taking Adderall. *Id*.

The ALJ found that Smith had less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for herself. He found no limitations in moving about and manipulating objects or physical health and well-being. PID 63–68. Accordingly, the ALJ denied disability to Smith. PID 69.

<u>Analysis</u>

"Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009). "The substantial-evidence standard is met if a reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Id.* at 406 (internal quotation marks and citation omitted). The substantial-evidence standard presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Id*. Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion. *Id*. "We give de novo review to the district court's conclusions on each issue." *Id.*

A child is disabled when she has a lasting and severe impairment that meets, medically equals, or functionally equals a regulatory listing. 20 C.F.R. § 416.924(a). The regulatory listing for ADHD requires medically documented findings of marked inattention, impulsiveness, and

hyperactivity and at least two of the following: (1) marked impairment in cognitive or communicative functioning; (2) marked impairment in social functioning; (3) marked impairment in personal functioning; and (4) marked difficulty in maintaining concentration, persistence, or pace. 20 C.F.R. § 404, subpt. P, app. 1, § 112.11. To functionally equal a listing, a child must have marked limitations in two specified domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a)-(b). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id*.

Substantial evidence supported the ALJ's conclusion that Smith did not have the marked impairments required to meet or equal the listing for ADHD. Smith's testimony and her medical and school records demonstrated that her ADHD symptoms improved considerably with medication and that, as she got older, Smith's mood stabilized, her ability to concentrate and focus increased, and she made significant progress in her academic performance and social functioning. *See* 20 C.F.R. § 404, subpt. P, app. 1, § 112.11; 20 C.F.R. § 416.926a(g)-(i). The plaintiff herself testified that medicine reduces the symptoms of her ADHD. *See Hardaway v. Secretary*, 823 F.2d 922, 927 (6th Cir. 1987) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits); 20 C.F.R. § 416.924a(b)(9)(i) (the ALJ may consider the effects of medications on symptoms). Further, there was no significant evidence that Smith had difficulty with moving about, manipulating objects, or caring

for herself or that there were deficits in her health and physical well-being. *See* 20 C.F.R. § 416.926a(j)-(l). The opinions of the state agency psychologists, experts in Social Security disability evaluation, also indicate that Smith's impairments did not functionally equal the Listings. PID 319–24, 327–32. *See* 20 C.F.R. § 416.927(e)(2)(i).

In addition, despite Smith's argument to the contrary, the ALJ properly considered Dr. Pickering's medical opinion and gave valid reasons for discounting it. *See* 20 C.F.R. § 416.927(c). In deciding the weight to give a medical opinion, the ALJ considers the following factors: 1) examining relationship; 2) treatment relationship; 3) supportability; 4) consistency; 5) specialization; and 6) any other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c); 416.927(c). The ALJ reasonably explained that he gave little weight to Dr. Pickering's conclusions because he only examined Smith once,[2] his conclusions were based primarily on subjective allegations rather than objective medical findings, and his conclusions conflicted with Smith's treatment records and other substantial evidence in the record. As the ALJ explained, Smith received extensive treatment from Quinco Mental Health Center, where she was not diagnosed with anxiety or a mood disorder. PID 62. At Quinco, she was prescribed Adderall and her ADHD symptoms "improved considerably with compliance with medication

---

[2]Because Dr. Pickering only examined Smith once, he is not, as she argues, her "treating source." *See* 20 C.F.R. § 416.902 ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.") Rather, the ALJ found that Smith received ongoing treatment from Quinco Mental Health Center. Smith argues that greater weight should have been given to Dr. Pickering's conclusion because his examination of Smith was a year later than the state agency psychological consultants. While that is correct, there is record evidence of ongoing treatment from Quinco through January of 2010 showing evident improvement, and Smith testified before the ALJ in April of 2010 that Adderall controls her ADHD. Dr. Pickering's own evaluation indicates that both Smith and Ms. Carmon reported that Smith responds well to Adderall. PID 431. Moreover, the ALJ has the ultimate responsibility for assessing functional equivalence. See 20 C.F.R. § 416.926a(n).

and were noted to have lessened as she has gotten older." PID 63. ALJ's must give "good reasons" for not giving the opinions of treating physicians controlling weight. *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 286 (6th Cir. 2009). However, Dr. Pickering was not Smith's treating physician; rather, Smith was sent to Dr. Pickering by her representative prior to her hearing. Appellant's Br. at 14. Moreover, even when weighing the opinion of treating physicians, "the ultimate decision of disability rests with the administrative law judge." *White*, 572 F.3d at 286 (holding the ALJ did not err in discounting the assessment of a physician where the assessment was in tension with another evaluation, it lacked detail, and it conflicted with other evidence in the record indicating the claimant's sustained improvement). Moreover, "[b]ecause subjective complaints do not constitute objective medical findings," this Court defers to the ALJ's assessment of a doctor's opinion where nothing in the record supports his findings. *Walton v. Comm'r of Soc. Sec.*, 60 F. App'x 603, 610 (6th Cir. 2003); *see also Keeler v. Comm'r of Soc. Sec.*, 511 F. App'x 472, 473 (6th Cir. 2013) (substantial evidence supported the ALJ's decision not to give controlling weight to a physician's opinion because it conflicted with her findings, was contradicted by other evidence in the record, and appeared to be based primarily on the claimant's subjective complaints).

Finally, the ALJ adequately addressed the credibility of Smith's mother, who testified that Smith had academic and behavioral problems and difficulties with oral instructions, recall, and focus. The ALJ reasonably explained that he discounted the testimony to the extent that it was inconsistent with the majority of objective medical evidence and other evidence in the record demonstrating significant improvement in Smith's academic performance, behavior, and cognitive ability. *See White,* 572 F.3d at 287. For example, the ALJ correctly held that while Smith's mother testified that Smith received grades "B" and "D," her report cards for seventh

and eighth grade show higher grades as well as enrollment in Honors Algebra. PID 61–62. The ALJ further noted that most of the behavior problems described by Smith's mother occurred primarily in the past, prior to adherence to medication, and current medical records reflect that Smith is cooperative and well-behaved. *Id.* Moreover, the ALJ correctly held that Smith's mother's claims were inconsistent with the evidence from Quinco showing strong focus and attention when on medication. PID 62. Where the medical record is contrary to the assertions of a witness, the ALJ does not err in finding that their testimony is not fully credible. *White*, 572 F.3d at 287 (upholding credibility determination where, contrary to the witness's assertions, the medical record showed that she responded well to medications and therapy).

Accordingly, we affirm the district court's judgment.